.. TIDRICK AND NORRIS V. RICE.[1]

1. AGENCY: POWER TO BIND THE PRINCIPAL. The authority of an agent of a banking house to discount notes and take security does not include the power to receive for the principal a conveyance of real estate, and to bind such principal by a bond for a reconveyance by a deed containing a covenant of general warranty. The power of such an agent, in the absence of special instructions, is governed by the uniform rule or custom of the house.

2. SAME: CUSTOM. When a banking house which was in the habit of discounting notes and taking conveyances of real estate as securities (executing back bonds for reconveyance), used printed forms in executing such bonds, which forms contained a covenant of special warranty, it was held that such form should have been regarded by an agent in the nature of special instructions, or a rule of the house for the transaction of that class of business.

3. SAME: NOTICE. A party taking from an agent a bond containing a covenant of general warranty, must at his own peril, ascertain the nature and extent of the agent's authority.

---

[1] This opinion determines two cases consolidated by agreement of parties—one a chancery cause entitled *Tidrick and Norris* v. *Rice*, and the other an action at law arising out of the same subject matter, entitled *Easley* v. *Tidrick and Norris*.

Tidrick and Norris v. Rice.

4. SAME: RATIFICATION. The conduct of a principal will not be construed as a ratification of a bond executed by an agent, when it does not appear that at the time he had knowledge of the existence of the bond.

*Appeal from Polk District Court.*

TUESDAY, APRIL 22.

THE facts are fully stated in the opinion of the court.

*Byron Rice, pro se.*

1. A court of equity does not decree a specific performance as a matter of course, even of a valid contract, and it will never execute a hard or unconscionable bargain, or one tainted with fraud. 3 Barb., 50; Story Eq., 333.

2. Where an agent contracts to sell property in a manner not authorized by his principal, the contract will not be enforced; neither will the specific performance of a contract which involves a breach of trust be decreed. 2 L. C. Eq., 52, and the cases there cited.

3. A court of equity will refuse to decree a specific performance on the ground of hardship, even when there is no other objection. Story Eq., 331; *Terwilliger* v. *Matthews*, 3 Barb., 50, and the numerous cases there referred to; 2 Ves., 307; 1 Sug. Vend., 24, § 36.

4. The contract which complainants seek to enforce is not supported by a sufficient consideration, and should not be enforced, for that reason. Story Eq., 787, 793; 4 Paige, 305; 2 Blackf., 431.

5. The defendant cannot convey a good title to the property in controversy, and for that reason will not be decreed to specifically to perform. Story Eq., § 716, and note; 1 Mad., 295.

*C. C. Nourse* for the appellee.

1. The acts of an agent, or one whom a man puts in his place to transact all his business of a particular kind or at a particular place, will bind his principal so long as he keeps within the general scope of his authority, though he may act contrary to his general instructions. 2 Kent, 621; *Johnson* v. *Jones*, 4 Barb. S. C. R., 370.

2. In the absence of instructions, the agent was governed by the usages of the business. Dunlap's Paley's Ag., 4; *Owings* v. *Hull*, 9 Pet., 608; *Leroy* v. *Beard*, 8 How., 451; 1 Pet., 25.

. 3. If an agent has authority to sell, he may warrant against express instructions, and the principal will be bound. *Hunter* v. *Jamison*, 6 Iredell, 253; *Benjamin* v. *Eyzell*, 1 Tenn. (Sneed), 497.

4. Defendant's conduct amounts to a ratification of the agency. · An adoption of the agency in one part, with a knowledge of all the circumstances, operates as an adoption of the whole act. Dunlap's Paley's Agency, 172, note *i*.

LOWE, J.—These suits, by agreement, were consolidated. The facts giving rise to them may be stated as follows:

On the 18th day of June, 1856, one Franklin Palmer sold to Tidrick and Norris a tract of land, containing 15 $\frac{95}{100}$ acres, designated as lot 3, in sec. 5, T. 75, N. of R. . 24 W., as surveyed and platted by John McClain, county surveyor, for a consideration, part of which was paid down, the balance in two deferred payments, one of $800, at 6 months, the other of $600, at 10 months, for which sums notes were given, drawing 10 per cent interest from date. On receiving these notes from Tidrick and Norris, Palmer executed and delivered to them a title bond, binding himself to convey to them, by deed of general warranty, the property in question, when the notes specified should be paid.

In September following, before the first note fell due, Palmer offered them for discount at the counter of the

banking house of Green, Weare & Rice, at Des Moines. The latter, Mr. Rice, being the only resident partner, was the active and managing member of the firm. At this particular period of time, however, he was absent in the east, having left the business of the house in charge of three clerks, the chief and controlling one of whom was a Mr. Taylor, who had with him Messrs. Pollock and Okell, occupying more subordinate positions as clerks.

The business of this banking establishment included that of a real estate agency, and also the agency of investing and loaning the money of outside parties to the best advantage, upon adequate security. Anterior to this time, a Mr. James S. Easley, of Virginia, had placed the sum of $4,000, with this house, to be thus loaned or invested for his benefit.

Mr. Taylor, after due inquiry, informed Mr. Palmer that he was willing to accommodate him in the matter of the application for a discount of the notes in question, on the condition that he would execute a deed of conveyance with a covenant of general warranty for the land sold to Tidrick and Norris at once and directly to Byron Rice, who would make his title bond to the said Tidrick and Norris for the same land, whereupon the bond from Palmer to these parties should be given up for cancellation, provided Tidrick and Norris would accept Rice's in lieu thereof. They consented to do so, and the arrangement was entered into, as proposed. The negotiation, however, was entered into by the banking house as his agent for the benefit of James S. Easley, whose money was used in purchasing the notes aforesaid. These notes, when received by Taylor, representing the bank, were indorsed in blank, and filed with the papers of Easley, as securities belonging to him, and also certain entries were made at the time in the books of the establishment, showing that the transaction had been effected for the benefit, and on the account, of the said Easley. Mr. Taylor, however, instead of execut-

ing a title bond to Tidrick and Norris in the name of Easley, the principal, and the party chiefly interested, or in the name of the firm constituting the banking house, who in their capacity alone as a firm, were the agents of Easley, gave what was intended to be a bond for title in the individual name of Rice, alone. Great stress is attempted to be imparted to this fact by the defendant, Rice, both in his pleadings and his argument.

But the conclusion to which we have been brought in the case by the evidence, from the best analysis which we could give to the same, makes it unnecessary for us now to determine to how much importance this circumstance is entitled. Pursuing the facts in the chronological order, in which the testimony shows them to have occurred, we proceed to say that Mr. Taylor, in executing the alleged bond from Rice to the plaintiffs in the chancery suit, made it to correspond substantially in its terms with the blank form of a printed bond which had been adopted and used by that house, without exception, so far as the evidence shows, in all similar cases; that is to say, a bond which stipulated to re-convey by a deed with a special warranty.

When such a bond was presented to Mr. Tidrick, he protested that it was unlike the bond they held from Palmer, and insisted that it should contain a covenant for a general warranty deed. This demand was readily complied with by Taylor, who gave a new bond, that Mr. Rice should convey the land by a general warranty deed, on condition the notes specified should be punctually paid at maturity. This being satisfactory, the transaction was closed. The $800 note falling due about the 20th of December, thereafter, was paid by Tidrick and Norris, and received by the banking house of Green, Weare & Rice, without objection by either party. When the $600 note fell due, in April, 1857, Tidrick and Norris made a legal tender for the full amount thereof at the banking house of

Green, Weare & Rice, and offered to pay the same, on condition that Rice would make to them a general warranty deed for the property in question, according to the covenant of his bond. This was refused by Rice, first because Taylor, as the clerk and employee of the firm of Green, Weare & Rice, had no power or authority to bind said firm, or an individual member of said firm, in any such covenant, even in a transaction where they were the principals and directly interested, much less in a transaction of this description, where they themselves were the agents, doing business for a third party; second, because the title of this property had been placed in him without his consent or knowledge, and whilst he was absent from home, that he had no interest in nor had he received any benefit from the same, and that it would be inequitable, under such circumstances, to place him in a position where he would be subjected to the liability of making good, for all time to come, Palmer's title to said property.

In this attitude of the parties to each other, Tidrick and Norris commenced their suit in chancery, on the bond, for specific performance, and, shortly after, Easley instituted a collection suit on the note against them. Both of these suits resulted in favor of Tidrick and Norris. The facts set up in the petition for a specific performance, constitute substantially the defense in the collection suit, hence the agreement to consolidate. It is in this consolidated form or condition of the record that the whole case is now before us, and the first noticeable feature presented by this record is the somewhat remarkable fact that before either suit was brought, each party defendant offered to do what it is now sought to compel them to do by the institution of said suits, with the exception that Rice proposed to make the required deed with a covenant of special instead of a general warranty of title. This latter requisite was insisted upon by Tidrick and Norris, on the one hand, whilst upon the other

the obligation to do so was stoutly denied by Rice. The whole controversy, therefore, is narrowed down to that single question, the determination of which depends upon two facts. First, whether Taylor, the cashier and book-keeper of the banking house of Green, Weare & Rice, in representing the agency of the bank in discounting paper with the money of a third party, and taking real estate security for the debt thus created, had the authority to take the title in Rice's name, and bind him to reconvey with covenants for a general warranty deed. If not, then, secondly, whether he afterwards adopted and ratified the exercise of such authority.

Upon these two points a large amount of testimony has been taken, upon which we can give no space in detailed comment, but shall simply state, in very general terms, our conclusions upon the same.

On the first point, direct or express authority is not pretended, but that it existed by implication, from the nature of the duties which Mr. Taylor, as the employee of the defendant, Rice, and his associates, was required to perform, that the power to discount and take security included the exercise of such authority. This by no means follows. In the absence of special instructions on the subject, it would depend upon the rule or custom which the house had uniformly adopted for itself.

In negotiations, made on its own account, where security was taken in the method spoken of, the house, it seems, had established a rule, from which there is no evidence that it had ever departed, and that was to give a bond to reconvey, with a covenant of special warranty.

Printed forms of bonds of this description were in the banking house at the time of this transaction, and should have been regarded in the nature of special instructions to Mr. Taylor, in the premises. Indeed, he seems to have so considered it himself, for the first bond which he drew and

tendered to Tidrick and Norris corresponded with the blank forms, but upon the suggestion, by Mr. Tidrick, that the bond should be in its terms like the one they held from Palmer, it was accordingly so modified. But it was no less the duty than the business of Tidrick and Norris to have ascertained the extent of Taylor's powers in making such a bond. By so doing, they would have learned, in all probability, that Taylor was specially restricted to the conditions of the bond which he first presented. If this is true in reference to negotiations made for and on account of the banking house itself, when the benefit is to result to it, *a fortiori*, it should be in a transaction made as agents by the house for the benefit of a third party. In such a case, the habits of dealing were not such as to authorize any bond whatever to be given by the agents, but in the natural course and custom of business, it should in this case have been given in the name of Easley, the party directly interested, and on whose account the negotiation was entered into.

But the chief reliance of the bond-holders in this case, in the argument of their counsel, is, that the acts of Taylor in the premises were subsequently ratified by Rice. If so, it is equal to an original delegation of authority to bind the principal. But we are not able so to interpret the evidence. At the time certain acts were done by Rice, after his return from the East, which are relied upon as amounting to a ratification, it does not appear in the evidence that he was advised that any bond whatever had been given in his name, more especially with the objectionable covenant in question; but that, on the other hand, when the existence of the bond, with its particular covenants and terms, was made known to him, he very promptly repudiated it as an unauthorized act by Taylor. This is very clearly our understanding of the evidence, when considered as a whole. The conclusion, therefore, to which we come, is, that Rice is under no obligation to execute the kind of deed

stipulated for, in the paper executed by Taylor; that Tidrick and Norris have no right equitably to insist upon it, under the circumstances; that under a special warranty deed from Rice, they will be in as good a position as if they had taken a general warranty deed from Palmer, under his bond, for the reason that in law they have the benefit of such a covenant in the deed from Palmer to Rice, and therefore have all the rights and protection they would have had under their contract with Palmer. Nevertheless, we are not prepared to hold that Tidrick and Norris should be compelled to accept from Rice a special warranty deed, for they had made no such contract with Rice or his agent, and we cannot consent to make a different contract for them.

Under the peculiar circumstances of this case, we see no alternative but to reverse the decree below and dismiss the plaintiff's bill, unless they will elect to accept from Rice a special warranty deed for the property in question; in which event, such consent being signified in a reasonable time, the same decree made below, in all respects, will be entered in this court, with the exception of the modification suggested. In the event that Tidrick and Norris do not elect to accept a special warranty deed from Rice, then the case at law, to wit: *Easley* v. *Tidrick and Norris*, which, by the agreement of the parties, had been consolidated with this suit, after it had been dismissed by the order of the court, is ordered to be reinstated in accordance with the stipulations of the parties, and the two causes, thus consolidated, will be remanded, to be again tried, agreeably to the principles and matters settled by this decision.