CAMP *v.* THE SOUTHERN BANKING & TRUST COMPANY.

1. Where, in the course of its regular business, a partnership had been accustomed to accept drafts drawn upon it by another, and to pay the same to a bank at which they had been regularly discounted, and the bank, within the knowledge of the partnership while yet existing, still held one or more of these drafts which had been accepted but not paid, the bank was, under these circumstances, such a creditor of the partnership as to be entitled to actual notice of its dissolution.

2. As to this creditor, mere proof of the publication in a newspaper of a notice of dissolution was not, of itself and without more, sufficient to discharge the partnership from liability upon a draft of the kind above indicated, drawn after the dissolution of the partnership, in part renewal of a former one duly accepted by it, and upon which renewal draft there was an acceptance in the partnership name, although the entering of the same was the unauthorized act of one of the partners, done after the dissolution had in fact taken place.

3. In such a case, the bank was not affected by information given to one of its messengers by a member of the former partnership, to whom a draft upon which the partnership was confessedly liable and which was subsequently renewed was presented, to the effect that the partnership had been dissolved and that the other partner was liable for its debts, this information not having in fact been communicated to the bank itself, and it appearing that this messenger's agency was confined to collecting commercial papers, and also that it was not within the scope of his business or duty either to report the

responses of persons who refused to pay papers presented, or to arrange with such persons or with others for a renewal of the same.

4. It is incumbent upon one alleging that the agency of such a collector extended to receiving and communicating to his principal information as to the dissolution of a particular partnership, to affirmatively prove the authority or duty of the collector so to do.

January 20, 1896.

Complaint on draft.   Before Judge Van Epps.   City court of Atlanta.   July term, 1895.

*Mayson & Hill*, for plaintiff in error.
*Brandon & Arkwright*, contra.

LUMPKIN, Justice.

The Southern Banking & Trust Company brought an action against Hudgins, as drawer and indorser, and J. A. Clarke and M. P. Camp, partners under the firm name of Clarke & Camp, as acceptors, upon a draft dated June 5th, 1893, drawn by Hudgins, payable to his order and indorsed by him to the plaintiff, and purporting to have been accepted by Clarke & Camp on June 6th, 1893.

The action was defended by Camp, who alleged in his pleas that the firm of Clarke & Camp was dissolved May 22, 1893, and proper notice of the dissolution published. Also, that the draft upon which the action was brought had never been accepted by himself; that neither Clarke, nor any one else, was authorized to accept the same in the firm name; and that he (Camp) had never ratified the act of acceptance.   At the conclusion of the evidence, the judge directed a verdict for the plaintiff.   Camp moved for a new trial; and his motion being overruled, excepted.   The facts of the case are about as follows:

It appears that while the firm was yet in existence, Hudgins had drawn numerous drafts upon it, payable to his order and duly accepted, most, if not all, of which he had discounted with the plaintiff at its bank.   At the time the firm was dissolved, the plaintiff—certainly within the

knowledge of Clarke, and most probably that also of Camp —held a number of these drafts which had been previously drawn and accepted as stated. The draft involved in the present case, though drawn after the dissolution of the partnership, was in part renewal of a former one which it had accepted. The acceptance upon the renewal draft was executed by Clarke in the name of the partnership. This was an unauthorized act on his part; but at the time it was done, the bank itself had no actual knowledge of the dissolution. Before this acceptance was signed by Clarke, a messenger of the bank had presented to Camp for payment a draft upon which the partnership was confessedly liable, and of which the draft now in controversy was, in part, a renewal. This seems to have occurred some time before the dissolution actually took place; but, nevertheless, Camp informed the messenger that the firm had dissolved, and directed him to take the paper to Clarke, who had assumed all its debts. After this, Camp heard no more of the matter until the acceptance now sued on was presented to him. A newspaper published in the city of Atlanta, May 22d, 1893, contained a notice of the dissolution of the partnership, but it does not appear that the same was ever read or seen by any one notice to whom would be imputable to the bank.

Creditors of a partnership are entitled to actual notice of its dissolution. This doctrine is well settled, and was distinctly recognized in *Askew* v. *Silman*, 95 *Ga.* 678. (See remarks of Simmons, C. J., in this connection, on pages 680–681, and authorities there cited.) It seems clear that this rule is applicable in the present case. At the time of the dissolution of the firm of Clarke & Camp, it was actually indebted to the plaintiff upon its own acceptances, and this fact was well known to the firm. We are at a loss to perceive why the plaintiff should not at that time have been regarded as a creditor and entitled to all its rights as such. So far, therefore, as it was concerned, mere

publication in a newspaper of the notice of dissolution—of which it had no knowledge, actual or constructive—would not be sufficient. In the absence of any notice of the dissolution, the bank had the right to treat the partnership as still existing, and to assume that the act of either partner, within the scope of the partnership business, would be binding upon the firm. Certainly, it was justified in believing that Clarke could properly accept a new draft given partly in renewal of one for which the partnership was confessedly liable.

The only remaining question is: Did the statement made by Camp to the bank's collecting messenger amount to notice to the bank itself of the fact of dissolution? We think not. In the first place, it seems from Camp's testimony that he stated to this messenger that the dissolution had taken place before this event really happened. But without attaching special importance to this apparent incongruity, we will simply remark it is manifest that, in the very nature of things, this messenger's agency was of a special and limited character. · It cannot, with any sort of fairness, be asserted that he was a general agent of the bank. It affirmatively appeared that it was not within the scope of his business or duty either to report the responses of persons who refused to pay papers presented, or to arrange for a renewal of papers in his hands for collection. While Camp may not have been aware of the limited sphere within which this agent was authorized to act, he certainly must have known that the collector was in no sense a general agent of the bank. Under these circumstances, could he rightly assume that this collector had authority to receive for the bank notice of the fact of dissolution? Unless he could thus assume, then he was bound to . inquire into the extent of the agent's authority. Under the facts appearing, we think this duty devolved upon Camp, and that he acted at his peril in assuming that what he told the collector would be actually communicated to the bank. It was not so communicated, and therefore

Camp cannot be said to have complied with the legal obligation resting upon him to see to it that the bank was really informed of the fact that the dissolution had taken place. We avail ourselves of this, our first opportunity to make a citation from the new edition of the American and English Encyclopædia of Law, the first volume of which far exceeds in merit its predecessor, though the latter, at the time of its issue, was so well prepared and so thoroughly full and comprehensive that improvement seemed scarcely within the reach of human attainment. It is there said that "the principal is bound to the extent of the apparent authority he has conferred upon the agent, and not by the actual or express authority, where that differs from the apparent authority; and in either case, if the agent exceeds the authority conferred, his acts will not bind his principal." And again: "Third parties dealing with an agent are put upon their guard by the very fact, and do so at their own risk. They cannot rely upon the agent's assumption of authority, but are to be regarded as dealing with the power before them, and must, at their peril, observe that the act done by the agent is legally identical with the act authorized by the power." See pages 986 and 987. In the notes referred to in the above text the rule is stated to be that: "It is the duty of all having transactions with an agent in his representative character to inquire into the extent of his authority;" citing Vanada v. Hopkins, 1 J. J. Marsh. (Ky.) 287, 19 Am. Dec. 92; Tidrick v. Rice, 13 Iowa, 214. "Especially is this the case with one dealing with an agent whose authority he knows to be special;" citing Michael v. Eley, 61 Hun (N. Y.), 180; Nester v. Craig, 69 Hun (N. Y.), 543.

As no duty devolved upon the bank to make any effort to ascertain that the firm of Clarke & Camp had dissolved, and Camp utterly failed to take reasonable and proper steps to meet the obligation resting upon him of giving due notice of this fact, the rule above announced operates very justly in the present case.        *Judgment affirmed.*