## COMER *et al.*, receivers, *v.* HILL.

1. Knowledge on the part of a section-master that a railroad bridge-keeper's wife was in the habit of occupying with him at night a small house which the railroad company, for the purpose of protecting the keeper in bad weather, had caused to be erected near a trestle forming an approach to the bridge, and that the wife, in times of high water, used this trestle as a means of reaching the house, together with knowledge on the part of the supervisor of the railroad-track and also on the part of the supervisor of its bridges that the wife stayed at this house with her husband, did not constitute such notice to those charged with the running of trains upon the railroad as to raise a duty on their part to warn the woman of the running of an extra freight-train on the Sabbath day, for the want of which warning she was exposed to danger and death.
2. The evidence in this case did not warrant a verdict in the plaintiff's favor, and a new trial should have been granted.

Argued April 21, — Decided June 9, 1897.

Action for damages. Before Judge Butt. Taylor superior court. April term, 1896.

*W. S. Wallace* and *Little & Little*, for plaintiffs in error. *C. J. Thornton, C. C. West* and *O. M. Colbert*, contra.

Cobb, J. Hill brought suit against the Southwestern Railroad Company and the receivers of the Central Railroad & Banking Company, for the homicide of his wife. Upon the trial the testimony established the following facts: Plaintiff was employed by the defendants as a watchman of their bridge over the Flint river in Taylor county. A little house, or shanty, standing upon wooden pillars in order to be above the water in times of flood, was situated on the south side of the bridge, and was intended for the use of the watchman. Leading to the bridge was a trestle 170 yards long and 15 to 17 feet high. Plaintiff's wife for over two years had been staying with him at night in this house. She had no business there connected with the railroad, and her only business was to keep a water-gauge, for which she was paid by the government twenty-five

cents a day. The railroad company had provided a dwelling-house about a half-mile away for the bridge-keeper and his wife. In this house was contained a portion of the plaintiff's household effects, and it was occupied by him as a dwelling, except when he used the shanty near the bridge. When the water was low, plaintiff and his wife went from the shanty to the dwelling-house by a path; when the water was high, in order to leave the shanty and reach the dry ground, it was necessary to go upon steps to the trestle and walk upon it to the earth embankment at its end. On the morning of the homicide, which was Sunday, the water being up, plaintiff and his wife started from the house by the bridge to go to their dwelling-house. There being no train due according to schedule, and not expecting one to come, they went upon the trestle, and after walking some distance thereon, a freight-train, which should have passed four or five hours previously, came at a speed of twenty miles an hour, and plaintiff's wife was struck by it and killed. · Plaintiff stepped from the track and sat upon the cap-sill and was not struck; he had told his wife to get in a similar position, which she attempted to do, but the train struck her upon the head, killing her instantly. When first seen they were four or five hundred yards from the train. The speed was slackened to about fifteen miles an hour after plaintiff was seen. The engineer and fireman each testified that they used all possible means to stop the train. The fact that plaintiff's wife was occupying the shanty near the bridge, and that she was accustomed to use the trestle in leaving the shanty in times of high water, was known to the section-master as well as to the supervisor of the track and the supervisor of bridges of the defendants. Plaintiff's wife was between 52 and 53 years of age, and had no children. There was a verdict for the plaintiff for $3,500, and the defendants' motion for a new trial being overruled, they excepted.

Was there evidence sufficient to show a knowledge by the defendants of the use by the plaintiff's wife of the trestle as a footway between the house near the bridge and the dwelling-house, in order to charge the defendants with the duty of notifying her of the passage of trains which were delayed and

which were not running according to the regular schedules of the company? Not having any connection with the company, her presence in the house provided for the husband as bridge-keeper was simply for his convenience and comfort, and did not raise any duty on the part of the railroad companies to her. In order for the duty to notify her of the passage of trains to arise against the companies, if under the circumstances any such duty would ever arise, it certainly must be shown that her presence from time to time upon the track of the company was known to those officers of the companies who had in charge the running and operating of trains. The evidence fails to show notice to any one connected with that department of the railroad companies which manages the running of their trains, or to any individual employee connected in any way with the operation of trains. The section-master who had charge of the road-bed near the bridge, and the supervisor of the track whose duty it was to see that the track was kept in proper condition, and the supervisor of bridges whose duty it was to see that the bridges were safe, knew that plaintiff's wife was using the house and trestle. Not a one of these employees described was connected with the running of trains. The plaintiff's wife, therefore, being upon the trestle without authority and without the knowledge of the defendants, the only duty which was owing to her was to use all ordinary care to prevent harm coming to her after her presence upon the trestle was discovered. As the evidence established this to be the case, the verdict of the jury was unwarranted, and the court erred in not granting a new trial in the case.

*Judgment reversed.* *All the Justices concurring, except Little and Fish, JJ., disqualified, and*

ATKINSON, J., concurring specially. Without assenting either to the correctness of the conclusion reached by the majority of the court touching the matters of fact involved in the record in this case, or to the doctrine that the verdict of a jury, based upon a conflict of evidence, when approved by the trial judge, is subject to review in this court, I concur in the judgment awarding a new trial for the special reason that, as matter of law, the verdict is excessive.