## TERRY *v.* INTERNATIONAL COTTON COMPANY.

1. There was evidence sufficient to authorize the court to submit to the jury the question whether the person claimed to be the agent of the plaintiff in fact acted as such or not.
2. It being in issue whether a person was bound by the acts of another claimed to have been his agent, either under original authority or by

reason of ratification, there was no error in explaining to the jury the rule of law as to the extent of an agent's authority.

3. Authority to a special agent to obtain the signature of a seller to a prepared written contract for the sale of a certain amount of cotton, without more, does not include within itself authority to make a parol agreement that the cotton shall not in fact be delivered, but that the parties shall settle on the basis of the difference between the agreed price and the market price at the time for delivery.

4. If one desiring to buy cotton to be delivered at a future time sent to a special agent a written contract already signed by the buyer, for the purpose of obtaining the signature of the intended seller, and the seller refused to sign the contract except on the understanding that no cotton was to be delivered, but that the parties would settle on the basis of the difference between the agreed price and the market price at the time for delivery (an agreement prohibited by law), and thereupon the agent made such agreement in parol, and the contract was signed and transmitted to his principal, the bringing of a suit by the buyer against the seller for the non-delivery of the cotton did not of itself operate to ratify the parol agreement of the agent, there being no authority in the agent to make such a contract, no evidence of knowledge by the principal, and no act of ratification other than the bringing of the suit.

SEPTEMBER 24, 1912.

Complaint.    Before Judge Frank Park.    Randolph superior court.   July 1, 1911.

The International Cotton Company brought suit against W. R. Terry, for a breach of a written contract dated July 12, 1909, whereby the plaintiff agreed to purchase and the defendant to sell fifty thousand pounds of cotton at twelve cents per pound, to be delivered in merchantable bales at any warehouse in Shellman, Georgia, during the month of October. It was alleged, that the plaintiff was engaged in the business of buying cotton from producers and selling it to various cotton mills, and this was known to the defendant; and that he was engaged in farming, raising annually approximately one hundred bales of cotton. The defendant admitted a prima facie case, and claimed the right to open and conclude the case before the jury. He pleaded, that the contract really entered into between him and the plaintiff was a wagering contract, which was illegal, contrary to public policy, and unenforceable; that the written contract attached to the plaintiff's petition was a mere cloak to cover up and conceal the illegality of the transaction between the parties; and that the real understanding and agreement entered into between them was that no cotton was to be delivered under the contract, but that it was to be a mere speculation in "futures."

42

On the trial the evidence for the defendant, so far as it need be stated, was as follows: He first saw the paper which he signed in the office of J. M. Wooten, at the warehouse of the latter in Shellman. Defendant was passing Wooten's warehouse, and Wooten called him in and told him that he (defendant) could sell some cotton at twelve cents per pound, and that Wooten had a contract ready that the defendant could sign. Defendant told Wooten that he would not sign anything but a "future" contract; that he did not expect to deliver any cotton to anybody. Wooten said that it would be all right, he did not expect any cotton. Defendant then signed the contract. He received from Wooten the dollar recited as a consideration of the contract. About the middle of October the defendant saw Dunn, the manager of the plaintiff. Defendant made an offer to settle the matter by paying a certain amount, but Dunn demanded more, on the ground that the market price was higher, and no settlement was effected. At the time when the question of settlement in money was discussed, Dunn did not say anything about preferring to receive cotton; he did not say anything about wanting cotton. On cross-examination the defendant testified: "My idea in making a contract and not delivering the cotton was to hedge, like I have done before. . . Yes, Mr. Wooten runs a warehouse there, and he and I are good friends. I keep cotton at his warehouse sometimes; I did in 1909. I don't hold any spot cotton; I give him authority to sell it as it comes in; . . I have been doing business with him that way a long time. We were in the fertilizer business together. I had him hired for wages that year, my recollection is. I don't know whether we were connected or whether he was hired for wages." One Mizell, testified, that he was in the warehouse and heard defendant say to Wooten, "I don't expect to deliver any cotton on the contract, but we will settle on the difference, one way or the other;" and that the witness walked out and did not hear the reply of Wooten. On cross-examination he testified that he heard Wooten tell the defendant, "I have got the contract here for Mr. Dunn," and "I have sold your cotton and got the contract here," and also mentioned that there were others.

On behalf of the plaintiff, in addition to introducing the written contract on which the suit was based, Dunn, the manager of the agency of the plaintiff at Cuthbert, testified, among other things,

as follows: He employed the employees for that territory with the approval of the home office; any extra help he needed, he decided for himself. He never employed Wooten to represent him or the company. Wooten called him up by telephone during the month of July, prior to the date of the contract, and asked him if he could handle some cotton "over there" at twelve cents per pound. On that day Dunn did not have the price limit from the Albany office that would justify him in paying that price, and answered Wooten in the negative, but said he would see if he could get it later on. The next day he obtained a price by which he could handle the cotton at twelve cents. He called up Wooten and asked the latter who were the parties that wanted to sell, and Wooten gave him a list of three or four, including defendant, and said he could buy so many bales from each of the parties. Dunn replied that the plaintiff would take the cotton. Dunn prepared the contracts complete, signed them for the plaintiff, and sent them to Wooten. "I had no intention whatever to settle on differences based on the market price, rather than the acceptance of the delivered cotton; at the time the purchase was made, my intention was to get the cotton; that's what they told me from the house— to buy from parties that would deliver the cotton. I never mentioned to a soul about settling on differences until Dr. Terry approached me over there one day when I was shipping cotton. Mr. Wooten had no authority whatever to represent me or the company. . . Yes, I did make a request of Dr. Terry to deliver me that cotton; when he offered to make the settlement there, I told him and Wooten both that I preferred to have the cotton; that was before this contract was due. . . When I sent that contract for Dr. Terry's signature it was not my idea to make a settlement of that kind based on the cash value. I expected to get the cotton." He sent the contracts to Wooten by mail, and received them back the same way signed.

The jury found for the plaintiff $1,000 principal, besides interest. The defendant moved for a new trial, which was refused, and he excepted.

*R. Terry* and *Glessner & Park,* for plaintiff in error.

*J. W. Harris* and *I. J. Hofmayer,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The plaintiff sued the defendant on a written contract dated July 12, 1909,

by which the former agreed to purchase and the latter to sell fifty thousand pounds of cotton at twelve cents per pound, deliverable in the fall. The defendant pleaded that the contract was a wagering contract and unenforceable, the real understanding and agreement between the parties being that no cotton was to be delivered under the contract, but that it was to be a mere contract for "futures," whereby the parties speculated on the market price of cotton, and the losing party was to settle with the winner by paying to the latter the difference between the contract price and the market price. He admitted a prima facie case, and assumed the burden of proof. The jury found for the plaintiff; and a new trial having been refused, the defendant excepted.

1. It was contended that there was no evidence to authorize the submission to the jury of the question whether Wooten was the agent of the plaintiff and acting for it in the transaction, and that it was error to submit any such question to them. We can not agree to this contention. On cross-examination the defendant stated, that he and Wooten were good friends and were in the fertilizer business together; that during the year when this transaction occurred Wooten was either employed by him for wages or was his business associate; that Wooten conducted a warehouse; and that the defendant gave him authority to sell his cotton as it came in. The testimony of the manager of the plaintiff's agency at Cuthbert was to the effect that he never employed Wooten to represent him or the company; that Wooten called him up by telephone and asked him if he could handle some cotton "over there" at twelve cents per pound. Another witness testified that he heard Wooten tell the defendant "I have sold your cotton and got the contract here." While there was evidence tending to show that the manager of the plaintiff made Wooten the plaintiff's agent for the purpose of obtaining the signature of the defendant to the written contract of sale which had been prepared, there was enough to authorize the judge to submit to the jury the question as to whether Wooten was the agent of the plaintiff.

2. The jury being laymen, and not skilled in the rules of law as to the extent of an agent's authority, it was proper to inform them as to its extent and what it comprehended under the law.

3. If Wooten was the agent of the plaintiff, he was a special agent, under the evidence. As matter of authority, he was limited

by the terms of his agency. Authority to obtain the signature of the defendant to a prepared written contract for the purchase and sale of cotton did not include any authority to make a parol agreement that the cotton should not be in fact delivered, but that the parties should settle on the basis of the difference between the agreed price and the market price at the time for delivery. If Wooten made such a contract, it was beyond the scope of his authority, under the evidence, and could not affect the rights of the plaintiff under the written contract, unless his conduct was ratified. Civil Code, § 3595. If such agreement was made and ratified, then the plaintiff was affected by it as if it had been originally authorized.

4. If both of the parties to the written contract for the purchase and sale of the cotton intended or understood, when the contract was made, that there should be no actual delivery, but a settlement on the difference between the agreed price and the market price, the transaction was invalid. Civil Code, § 4258. But a contract for actual sale and future delivery would be valid. *Forsyth Mfg. Co.* v. *Castlen,* 112 *Ga.* 199 (37 S. E. 485, 81 Am. St. R: 28) ; *McCall* v. *Herring,* 118 *Ga.* 522 (45 S. E. 442). There was no evidence that the company, or any agent authorized to bind it in that regard, had any understanding or intent that the contract should be a dealing in "futures," or that the company was engaged in that character of business. If Wooten was the agent of the company, he was only a special agent. The written contract was prepared and signed and sent to him to have it signed by Terry, and perhaps to pay to the latter the $1 recited as a consideration. The evidence showed no authority on his part to have any additional understanding with Terry as to non-delivery. The question arises whether there was a ratification of his conduct. The presiding judge submitted generally the rule that ratification of an unauthorized act of an agent binds the principal as though there had been original authority. But it is contended that when the company brought suit on the written contract it necessarily ratified the conduct of Wooten in obtaining it. Terry was charged with notice that the agreement which he asserts he made with Wooten as the agent of the company was beyond the scope of the latter's authority, and one which would render the whole transaction invalid and constitute a misdemeanor. Civil Code, §§ 4258,

4259; Penal Code, § 403. Yet he says he made such an agreement. In its last analysis, the defense is, that a legal written agreement for the purchase and sale of cotton was signed by the buyer and sent to a special agent to obtain the signature of the seller; that the latter, with notice of the want of authority in the agent, nevertheless caused the agent to make in parol an additional criminal agreement which, if chargeable to the principal, would render the whole void; and that the principal can not set up the legal contract without ratifying the illegal one. This is no case of obtaining a signature from an innocent party by fraud or misrepresentation; nor is it one where an agent is authorized to make a contract and fix its terms. Terry was not an innocent or defrauded party. According to his defense, he caused a special agent to violate his authority and commit a misdemeanor, which he insists the principal must ratify for his protection. The doctrine that a principal can not ratify the acts of his agent in part, but must adopt the whole or none, has no application to such a case, so as to compel the principal to ratify the unlawful agreement of his special agent, made with one who had notice, if he seeks to set up the written agreement which is lawful on its face and authorized. The purchasing company desired to make a legal contract for the purchase of cotton. The seller signed such a contract. He now seeks to set up a supplemental parol agreement with the plaintiff's special agent who presented the contract for his signature, which would make the contract illegal and invalid. The law declared that the seller could not make such a contract with the principal or the agent. He was charged with knowledge that it was criminal to do so, and that the agent was without authority to do it. Nevertheless the seller declares that he made such an illegal parol agreement with the special agent, and that the principal must ratify the crime if he attempts to set up the legal contract.

A similar rule to that now declared has been applied in a case where an agent for a lender charged a borrower a sum as a commission for making the loan, besides reserving the maximum legal rate of interest on the loan, but this was unknown to the principal and unauthorized by him, and no part of the commission was received by him. *McLean* v. *Camak,* 97 *Ga.* 804. In that case a deed was made to secure a debt, and in a suit to recover the land the defense was that the deed was void because tainted with usury.

Civil Code, § 3442. In the opinion it was said (p. 808): "The borrower has no right to assume that even a general agent has power to bind his principal by such an agreement; for, the same being illegal and prohibited by law, the borrower is put upon immediate notice that the agent is transcending his general powers and going beyond the legal scope of his agency. Only by showing that the agent was in fact authorized by his principal to reserve the commission can the borrower claim immunity because of an act by the agent which he is bound by law to know was illegal and not binding upon the principal unless previously authorized, or subsequently ratified, by the latter." Bringing a suit to recover the land, based on the deed which the agent took for his principal, was not treated as ratification of the taking of commissions.

While that decision has been somewhat discussed, the leading principle announced in it has been adhered to and the language quoted has been copied with approval. *Clarke* v. *Havard,* 111 *Ga.* 242, 252 (36 S. E. 837, 51 L. R. A. 499), where suit was brought by the principal on the note taken for the loan.

The rule that notice to an agent of any matter connected with his agency is notice to the principal (Civil Code, § 3599) does not apply where an agent conspires with the other party. In such a case, the principal is not bound thereby, or charged with knowledge of the facts thus acquired by the agent. Civil Code, § 3600. But really the question here involved is not one of charging the principal with notice of a fact, but whether outside of the written contract there was a parol agreement or understanding, not by one of the parties, but by both; and whether, if an unauthorized and unlawful collateral agreement was made by a special agent in parol, the principal was bound to ratify it, if he sued on the written contract.

If there were any errors committed, they were not such as to require a new trial. *Judgment affirmed. All the Justices concur.*