25662. BAZEMORE v. POWELL, receiver, *et al.*

DECIDED OCTOBER 29, 1936.

*Oliver & Oliver,* for plaintiff.
*Anderson, Cann & Dunn,* for defendants.

SUTTON, J. This case was previously before this court as reported in *Lewis* v. *Powell,* 51 *Ga. App.* 129 (179 S. E. 865), to which reference may be made for a detailed statement of the pleadings. After this court reversed the judgment of the trial court sustaining a demurrer to the petition, a trial was had and the jury returned a verdict for the defendant. The plaintiff filed a motion for new trial on the general grounds and on several special grounds, which was overruled, and the plaintiff excepted.

The first special ground is that the court erred in excluding from the consideration of the jury evidence of a witness that "on a night shortly before this injury occurred, I was driving into town in my automobile. There was no flagman; the lights were not burning. I heard no signal from either a bell or whistle, and the junk-pile to the right of the road obscured my view, and the engine was crossing the track as my automobile approached. With the greatest effort I was able to stop my automobile only within two or three feet of the engine as it passed." As to the absence of a flagman at the crossing, the ruling of this court in *Lewis* v. *Powell*, supra, that the defendant was under no obligation to maintain one, became the law of this case. As to the proffered proof of acts of negligence in not giving a signal by the ringing of a bell or the blowing of a whistle on a former occasion, it is the general rule that in a suit for negligence, evidence of similar acts or omissions on other and different occasions is not admissible, and the proffered evidence did not show any reason for an exception to this rule. *Butler* v. *Central of Georgia Ry. Co.*, 41 *Ga. App.* 115, 119 (5) (151 S. E. 834); *Hollomon* v. *Hopson*, 45 *Ga. App.* 762 (166 S. E. 45); *City of Dalton* v. *Humphries*, 139 *Ga.* 556 (3) (77 S. E. 790).

The second special ground relates to the exclusion of testimony of a witness that her husband narrowly escaped injury from the collision of a truck with a train at the crossing in question, at a time when he was driving a truck, but when the witness was not present. Obviously such testimony was hearsay and clearly inadmissible.

The third special ground complains of a portion of the charge of the court in which it was stated that the allegation of negligence as to the absence of a flagman at the crossing was out of the petition, that is, that it was not to be considered by the jury. When this court previously dealt with this on a demurrer to the petition, the petition contained the allegation that it had been the custom of the railroad to maintain a flagman at the crossing, and the ruling of the court that the defendant was not obliged to do so became the law of this case. Moreover, there was no evidence of any such custom. The ground is without merit.

The fourth ground complains of a portion of the charge of the court in which it was stated that the plaintiff could not recover

on any allegation not stated in the petition, to which was added: "So you must confine yourselves to the allegations of negligence in the declaration, and as to those allegations of negligence—all of them—I shall later charge you when I take them up, except one, and that is this allegation of negligence with reference to the blow-post law." While the quoted portion is not quite clearly stated, it may be said to be more unfavorable to the defendant than to the plaintiff in referring to "all of them" in connection with the allegations, because, under the law of the case as made in the previous decision of this court, the only allegation of negligence left for the consideration of the jury was whether or not the defendant was negligent in approaching the crossing. The blow-post law puts on the defendant the duty of erecting blow-posts, and "the engineer operating the locomotive engine of any railroad train moving over the track of said railroad shall be required, when he reaches the said blow-post, as a signal of approach to said crossing, to blow through said whistle two long and two short blasts at intervals of five seconds between each blast; said blasts to be loud and distinct. In addition thereto, after reaching the blow-post furthest removed from said crossing, and while approaching said crossing, he shall keep and maintain a constant and vigilant lookout along the track ahead of said engine, and shall otherwise exercise due care in approaching said crossing, in order to avoid doing injury to any person or property which may be on said crossing, or upon the line of said railway at any point within 50 feet of such crossing." Code, § 94-506. The charge of the court, as contained in the record, shows that the jury was instructed as to the duty of the engineer to obey the above-named provisions of the law if on reaching the blow-post the train was making a continuous passage across the highway crossing in the present instance; but that if the engineer stopped the train at a point between the blow-post nearest the crossing and the crossing itself, the duty of blowing through the whistle as prescribed above would not apply until starting towards the crossing from the point at which he had stopped, and from that point he would be required to blow, as indicated by the statute, in passing over the crossing and beyond to the next blow-post. In giving such charge the court inadvertently stated that the engineer would be required to blow continuously, whereas under the statute he is required to

blow only at intervals of five seconds; but such error was harmful to the defendant rather than to the plaintiff. The only allegation of negligence not adjudicated in the previous decision by this court being that with reference to the approach of the train to the crossing, and the court not having incorrectly charged the blow-post law as against the plaintiff, this ground is without merit.

Ground 5 complains of the charge of the court that if the defendants were exercising ordinary care with respect to the matter charged as negligence in reference to observing the blow-post law, the plaintiff could not recover; it being contended that it excluded from the consideration of the jury all evidence showing negligence of the defendants in not having the engine under proper control, in not keeping and maintaining a constant and vigilant lookout ahead of the engine, in maintaining a junk-pile on its right of way, and in thus obscuring the view of the plaintiff and the driver of the automobile, of the engine as the automobile approached the crossing, in not having a flagman at the crossing, and other alleged evidence showing negligence on the part of the defendants, except as to a violation of the blow-post law. There was no evidence that the engine was not under control, and the engineer testified that he in fact had it under control. There was no evidence that the defendants did not maintain and keep a constant and vigilant lookout ahead of the engine. Nor was there any evidence that it maintained a junk-pile on its right of way. It was testified by one witness that he established and operated the junk-pile of old automobiles, and that the pile was on his property and not on that of the railroad. As shown in the preceding part of this opinion, the previous decision by this court made it the law of the case that the railroad company was not under a duty to maintain a flagman at the crossing. It follows that there was no error in the charge of the court, and this ground is without merit.

Grounds 6 and 7 complain of certain quoted parts of the charge of the court, which in effect informed the jury that they were concerned with only one allegation of negligence, viz., that allegation as to the approach of the train to the crossing. Under the law of the case the court properly restricted the jury in the particular named.

Ground 8 complains of a portion of the charge of the court

which, in effect, excluded from the consideration of the jury the testimony of several witnesses as to the defective hearing of the plaintiff as a result of injuries sustained from the collision of the automobile with the train; and ground 9, which may be considered in connection with it, complains that the court erred in failing to charge the jury that the plaintiff claimed damages on account of defective hearing resulting from the injuries which she sustained, and that in awarding damages the jury should take into consideration all testimony as to impairment of her hearing, although no claim was made in her declaration for damages on such account. The jury having been authorized to find, under the conflicting evidence, as shown in the latter part of this opinion, that the defendant was not liable, the error, if any, in failing to charge as to matters relating only to the question of damages will not require a new trial. *Livsey* v. *Georgia Railway & Electric Co.*, 19 *Ga. App.* 687 (3) (91 S. E. 1074); *Phillips* v. *Georgia Railway & Power Co.*, 27 *Ga. App.* 21 (107 S. E. 357).

As to the general grounds of the motion, there was a conflict in the evidence, which made an issue for the jury. On the question of the alleged negligence of the defendant at the crossing the following summary is sufficient. The plaintiff testified that "the pile of automobiles and junk was a pile 10 or 15 feet high there. They were piled right to the edge of the street-car track. . . They were three or four yards from the railroad there," that the pile of junk prevented her from seeing the train coming; that when she first saw the engine the automobile in which she was riding was 10 or 15 feet from the track; that they were driving at a rate of 5 or 10 miles per hour; that she had pulled down the window of the automobile and stuck her head out and looked and listened, but did not hear a whistle or bell; and that the driver of the car had the same opportunity as she had to see the train. She did not testify that the pile of junk was maintained by the railroad company, but testified as to the presence of the junk automobiles. She also testified that the driver of the car had been in the vicinity of the crossing a number of times; and that the automobile struck the engine at the rear end or steps of the cab. Two or three witnesses testified that they were in the vicinity of the crossing, and did not hear a whistle blown or bell rung; and that the pile of junk would obstruct the view of the approaching

train. George W. Montgomery testified that some of the pile of automobiles was right up to the railroad, and, with that condition and the presence of a store, one could not see anything on the railroad until getting right at the railroad-track, but he did not know whether or not the automobiles were on the right of way of the railroad or who operated the junk-pile; that pieces of automobiles were piled up between a fence (that of a property owner and a witness, Sing) and the railroad-track, but might have been on private property, and he guessed it was. James H. Lewis testified that the junk was between the fence and the railroad; that while about three hundred yards from the scene of the wreck he did not hear any whistle blown or bell rung, but was not paying any attention.

W. L. Wise, engineer, testified that on approaching the crossing he stopped his train because of the street-car tracks, sounding the whistle twice, and then proceeded, ringing his bell and blowing four blows at the crossing; that his headlight was burning; that he was on the opposite side from the wreck, and the automobile hit the engine on the left side about 35 feet from the cow-catcher; that he was blowing when going over the crossing after having stopped about three car-lengths, or 120 feet, before reaching it, that he blew two short blasts as proceed signals, then two long and two short; that he would have blown at the stop-board, but stopped before reaching the crossing and then made his blows; that there was no pile of old automobiles close to the crossing, but some were three or four automobile lengths back up in the yard from the railroad; that they did not obstruct his view of the crossing; he did not see the automobile approaching, because he was on the opposite side of the engine; that when he started to blowing the whistle he had a clear view of the paved road and street-car track ahead; that there was a house at the junk place that would prevent his fireman from seeing the automobile until it got almost to the crossing, but he could see it 75 feet away; that he was traveling over the crossing at about five miles an hour; that his fireman saw the automobile and called out to him, but it had hit the engine before he heard the fireman, though the fireman might have hollered before and the witness not have heard him while he was blowing the whistle and the fireman ringing the bell; that the fireman thought the driver would stop; that the witness knew

he had to keep a constant and vigilant lookout along the tracks ahead of the engine and otherwise to exercise due care in approaching the crossing, but that he did not hit the automobile, was struck by it; and that it was not ahead of him, or he would have seen it. Will Hargrove, fireman, testified that after the engineer blew the start-off signal he went to blowing for the road crossing; that the witness, while ringing the bell, looked and saw the automobile coming, and it hit the driving wheel under him; that when the car hit the engine the front end of the engine had passed over the crossing; that the engineer had blown, and at the second blast of the whistle the witness hollered to him about the approach of the automobile, and the engineer finished out the long blow, and the car hit the engine when the witness was ringing the bell; that he first saw the car about a block away, and the driver was "lighting a rag, sure coming." W. T. Sing testified, that he had a place of business right at the railroad crossing, and went out there about 8:45 o'clock on the night of the collision; and his car was blocked at a crossing on the Louisville road; that the train stopped and blew the crossing, pulled ahead a few feet distant, and made the second stop; that the only signal he heard was two long and two short blasts, the crossing blow, and he supposed the engine was up there where his place of business was, but did not know how near; that the pile of junk was on his property; that the distance from the railroad-track to his fence line was about fifty feet; that he did not pile any automobiles within fifteen feet of the railroad track, but stayed on his fence line; that a fireman could have seen an automobile approximately 100 yards up the road; that a man in a car could have seen the train at that distance, if he had been looking, in order to avoid injury; that he repaired the damaged automobile; that the windshield was discolored and blurred; and that if there was any junk between the railroad-tracks and a line within six feet of his fence, it would be on the railroad right of way, but it was not on the right of way. Other testimony was that the location of the crossing was outside the city limits of Savannah.

The evidence made an issue for the jury, and, though conflicting, was sufficient to authorize the verdict.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*