## 37073.   EMPLOYERS LIABILITY. ASSURANCE CORPORATION, LTD. *et al. v.* SHEFTALL.

DECIDED MARCH 14, 1958—REHEARING DENIED APRIL 1, 1958.

*Martin, Snow, Grant & Napier,* for plaintiffs in error.
*Miller, Miller & Miller, Lawton Miller,* contra.

TOWNSEND, Judge. ■ The plaintiff having in his petition alleged a breach of a building contract in certain specified particulars, and the defendant in his answer having denied the breach of contract and having also alleged: "These defendants further show that all of said construction was in accordance with, at the instructions of and under the approval of said architect and these defendants are completely released from any liability, having built it in accordance with the instructions of plaintiff's agent," two defensive issues were raised. One was a mere denial that the construction had not been according to contract as alleged by the plaintiff, and the other was a defense, supported by some evidence, that the architect approved the chimney in the condition in which it was actually built, although not in accordance with the specifications, and that the owner ratified all acts of the architect by giving him complete authority to agree to changes in specifications. Under the pleadings and evidence, accordingly, it was not error for the court to charge: "Where the defendants plead and set up an affirmative defense the burden rests upon such defendants to establish the truth of such affirmative defense by a preponderance of the evidence adduced upon the trial of the case." Here the plaintiff made out a prima facie case by the introduction of evidence showing that the defendant had not built the chimney according to the building specifications attached to and made a part of the contract, and that as a result thereof damage occurred. The defendant was then entitled to,

and did, offer evidence the purpose of which was to show that his failure to follow the specifications with exactitude was not actionable for the reason that it was a variance which had been acquiesced in by an agent of the plaintiff, and that the plaintiff had ratified such acquiescence on the agent's part even though it was unauthorized in the first instance. While the burden of proof remains with the plaintiff throughout the trial, the burden of evidence shifts, once the plaintiff has made out a prima facie case, to establish other facts which would negative liability on the part of the defendant. *Hanover Fire Ins. Co.* v. *Pruitt*, 59 *Ga. App.* 777 (2 S. E. 2d 123). *McCrackin* v. *McKinney*, 52 *Ga. App.* 519 (2) (183 S. E. 831). The rule of law contained in this charge is not restricted to situations in which a defendant *admits* a prima facie case and pleads matter in confession or avoidance, thus assuming the burden of proof. See Code § 38-103. These grounds are without merit.

■ The court charged in part that the plaintiff denies that Mr. Thompson, the architect, was his agent clothed with authority to authorize any changes without the owner's approval; that the question of agency is one for the jury; that if they should believe that the architect was acting within the scope of his authority his acts would be chargeable to the plaintiff, but if they found that the plaintiff did not authorize him to allow the defendants to make any changes in the construction of the house, then, even though the architect did authorize such changes his acts in this connection would not be chargeable to the plaintiff. On this issue the evidence was in conflict, but there is supporting evidence to the effect that the plaintiff never gave Mr. Thompson any authority to waive any terms of the contract or accept any work which did not come up to specifications. His wife testified to the same effect. The architect testified, "I had no authority to permit any deviation from the plans and specifications." The jury might well have reconciled this testimony with other statements of the plaintiff and his wife that they depended on Mr. Thompson, that they would endorse what he told the defendants to do, and that they ratified and agreed to his instructions, by finding that the whole testimony showed an endorsement by them of acts performed by the architect which were authorized under the contract, but not a ratification of acts in violation of the contract.

■

Where there is an issue as to whether a person is bound by the acts of another as his agent, either under original authority or by reason of ratification, it is not error to explain to the jury the rule of law as to the extent of an agent's authority. *Terry* v. *International Cotton Co.*, 138 *Ga.* 656 (2) (75 S. E. 1044).

■ Thirteen of the special grounds of the amended motion for new trial complain of the admission in evidence of copies of as many letters addressed to the defendants and sent from the plaintiff, his wife, his architect and his attorney. As to each of the letters the following objection was made: "This letter is immaterial and irrelevant. It is self-serving in that the whole content is generally concerning what they want us to do or what we haven't done." None of the letters is entirely a self-serving declaration, in that each one constitutes proof of the allegation in the petition that notice of the defects was given to the defendants. The first letter is dated December 2, 1954, and contains a list of unfinished items. The last letter, dated January 18, 1957, is a notice from the plaintiff's attorney to the defendants demanding indemnification. The intermediate letters, spanning more than a year, notify either the defendants or their bonding company of unfinished items, probability of rain damage, extent of prior rain damage, failure of persons sent by the defendants to repair the chimney to accomplish this purpose, particulars in which the specifications had been violated, breach of a subsequent agreement by the defendants to employ a roofing expert to make an independent examination, and so forth. These letters and the testimony in support thereof demonstrate that the defendants were given immediate notice, not only of the original failure to finish the construction in a workmanlike manner, but of each subsequent item of damage caused by the long period of time during which the leaks were not fixed. In order to recover the cost of the repairs, the consequential damages resulting from rain over a period of a year, it was certainly essential to the plaintiff's case that he show attempts on his part to minimize the damage and induce the contractors to meet the obligations of the contract, which meant informing them of flaws in subsequent corrective work, warning them of probable future damages, and reporting such damage when it occurred. Some of the letters contained irrelevant matter; and some contained self-serving

declarations. The general rule is that where a portion of the evidence offered is admissible and a portion inadmissible, an objection to the evidence as a whole which does not point out and limit itself to the objectionable part is not sufficient. *Stringer* v. *Wheeler,* 161 *Ga.* 91 (2) (129 S. E. 634); *Potts* v. *State,* 86 *Ga. App.* 779 (1) (72 S. E. 2d.553). For the proper procedure in such a case see *Kansas City Life Ins. Co.* v. *Williams,* 62 *Ga. App.* 707 (1) (9 S. E. 2d 680). Under the objections interposed, no reversible error is shown in allowing these documents in evidence.

■ Special ground 17 complains of the refusal of the court to give the following in charge in accordance with a timely written request: "The contract contains nothing about a one-year guarantee and any evidence as to any such claimed guarantee is hereby ruled out." Whether or not the contract contains such matter, by reference or otherwise, cannot be determined by this court for the reason that the building contract and specifications, which were introduced in evidence, are summarized in the evidence by reference to exhibits to the plaintiff's petition, which exhibits may or may not have contained all of the printed provisions of the original contract. On cross-examination by the defendants of the plaintiff's architect, the latter testified: "No architect can go and certify on the day of final inspection that every electrical wire is installed right. That's what the year's guarantee is for. You have a year's guarantee." Q. "Where is it? Please show me." A. "AIA general conditions. 1 through 44 shall be incorporated in the contract." Q. "Where are they?" A. "They are in my office. They are normally documents you don't put in these specifications which are referred to. They aren't attached to the contract because they're put in by reference. I'll be glad to get them for you." There was no objection made at the time, and no motion made later to rule out this testimony on the ground that it was not supported by documentary evidence. The evidence being in the record without objection, the jury was entitled to consider it, and the trial court properly refused to charge as requested. Failure to interpose a timely and proper objection must be treated as a waiver of the inadmissibility of testimony. *Eberhardt* v. *Bennett,* 163 *Ga.* 796 (4) (137 S. E. 64). This ground is without merit.

■ The special demurrers to the petition as well as special grounds 4, 5, 15, 16 and 18 all contend that the plaintiff was improperly allowed to plead, prove and recover attorney's fees in this case. Code § 20-1404 provides as follows: "The expenses of litigation are not generally allowed as a part of the damages; but if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." The plaintiff here seeks attorney's fees on the latter two grounds. In *Traders Insurance Co.* v. *Mann*, 118 *Ga.* 381, 385 (45 S. E. 426) it was held: "Expenses of litigation are not allowed for bad faith in refusing to pay, but where he has acted in bad faith in the transaction and dealings out of which the cause of action arose. . . If the original contract was made in good faith, if there is an ordinary breach, if the cause of action itself is not colored or poisoned by bad faith on the part of the defendant, he will not be mulcted with additional damages because he refuses to pay. Some defendants fail to pay because they are not able, others because they are not willing, and many because they dispute the liability. . . It has long been the policy of Georgia not to require the defendant to pay the expense of obtaining a judgment against himself." In that case it was alleged that the refusal to pay according to the terms of a contract was in bad faith and for the purpose of hindering, delaying, annoying and damaging the petitioner. The case dealt with the "bad faith" element of the statute only, and said that a mere refusal to pay a debt, nothing else appearing, did not constitute bad faith under the provisions of this Code section because it refers to bad faith prior to the institution of the action and not the motive with which the suit is being defended. In *O'Neal* v. *Spivey*, 167 *Ga.* 176 (3) (145 S. E. 71), an equitable action, the evidence clearly showed that the defendant had failed to accept a tender which he was in law bound to accept. Attorney's fees were sought on the ground that by reason thereof the defendant "has shown a stubborn and litigious spirit." The court held: "The expenses of litigation where the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, may be allowed. . . Any one of these three species of bad conduct may authorize a recovery of attorney's fees under

the provisions of this Code section. Acting in bad faith, or being stubbornly litigious, or causing the plaintiff unnecessary trouble or expense might in a particular case suffice to authorize a finding for attorney's fees."

We have no doubt that if all that this record showed was a refusal on the part of the defendants to pay the cost of repairing the chimney on this house so as to conform to contract specifications, or even a mere refusal to remedy a breach of contract, this case would not set out a cause of action for attorney's fees. What the pleadings and proof do show, however, is far beyond this. A finding was authorized that when it was pointed out to the defendants that the work was substandard they entered into various agreements, first to repair it, then to get an independent expert examination of it, and that they failed or refused to perform on each occasion; that because of their conduct the plaintiff continued to suffer additional consequential damage which occurred on several occasions and over a period of more than a year; that he was restrained from having the work corrected by others in the first instance because of the defendants, and that the defendants never did correct the work, never did get another to correct it, and never did give the plaintiff authority to have it corrected himself, even after they abandoned all efforts of their own. The evidence further shows that the defect in the chimney was correctable and was properly fixed by persons finally employed by the plaintiff. There is no reason shown why the defendants did not accomplish the same thing, either through their own employees or by subcontracting with another. As a result of this conduct, most of the damage arose, caused by water seeping in, cracking and rotting the woodwork, plaster, painting, and flooring. Accordingly, this course of conduct on the part of the defendants certainly put the plaintiff to additional trouble and expense. The attorney's fees were not sought or awarded on the basis of bad faith, for which reason nothing in *Traders Insurance Co.* v. *Mann,* 118 *Ga.* 381, supra, applies here. The trial court properly overruled the special demurrers to the petition and submitted the issue of attorney's fees to the jury.

The trial court did not err in denying the motion for new trial.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*