45141. FLOWERS, by Next Friend v. SLASH PINE
ELECTRIC MEMBERSHIP CORPORATION.

DEEN, Judge. 1. "Where no final ruling as to the admissibility of the evidence is invoked in the trial court, no question for decision is presented to the reviewing court. *Augusta Roofing &c. Works v. Clemmons,* 97 Ga. App. 576 (1) (103 SE2d 583); *State Hwy. Dept. v. Harrison,* 115 Ga. App. 349 (4) (154 SE2d 723). The same is true as to remarks of counsel as to his reasons for asking certain questions. Where opposing counsel stated matter contended to be prejudicial to the plaintiff's case as reflecting on the character of his witnesses, a rejoinder that he "is going to ask the jury to deny this boy justice on the basis of something his mother did" and "He's simply trying to prejudice this jury, Your Honor" without invoking a ruling of the court on the admissibility of the evidence or the propriety of the question or statement presents nothing for review.

2. Where a witness for the defendant testified that he had been general line superintendent with the company for 24 years and that it was his duty to know when changes were made in the lines, he demonstrated sufficient knowledge of the subject matter to be questioned on the stringing, layout and capacity of the electric lines over the houses where the plaintiff was injured. A motion at the close of the witness' testimony to exclude all of his evidence, most of which consisted of answers to fact questions coming within the ambit of his employment, was properly overruled. A dragnet objection to evidence, part or most of which is admissible, is too general for consideration. *Employers Liab. Assurance Corp. v. Sheftall,* 97 Ga. App. 398 (103

SE2d 143). Nor was it error to allow the witness to testify, as to a streetlight wire running over the same poles, that "this particular one comes on through a photo-electric control . . . the light doesn't come on 'til dark," over the objection that the witness was not shown to have personal knowledge of the fact, where it was followed by a specific statement that the wire in question was controlled by a photo-electric cell which allowed the "juice" to flow through only during hours of darkness.

3. Evidence of negligence or the lack of it as shown by what a party has done on other occasions or what he would do on other occasions with the benefit of hindsight lies in that twilight zone of judicial rulings sometimes held discretionary, sometimes harmless (or harmful) error, and sometimes admissible under the specific facts of the case. Ordinarily, in an action based on negligence, similar acts or omissions on other and different occasions is not admissible. *Bazemore v. Powell,* 54 Ga. App. 444 (188 SE 282); *Smith v. Morning News, Inc.,* 99 Ga. App. 547 (3) (109 SE2d 639); *Flint Explosive Co. v. Edwards,* 84 Ga. App. 376 (66 SE2d 368). If proof of a similar accident or similar method of acting tends to prove some fact of the case on trial, the testimony falls within an exception—such as to show knowledge of a defect (*City of Dublin v. Howell,* 68 Ga. App. 463 (23 SE2d 177)), or causation (*Gilmer v. City of Atlanta,* 77 Ga. 688, 690) or to rebut a contention that it was impossible for the accident to happen in the manner claimed (*Hogg v. First Nat. Bank,* 82 Ga. App. 861 (6) (62 SE2d 634)). Here error is enumerated because the court (a) refused to allow testimony that power lines were sagging dangerously in another location; (b) admitted over objection testimony that after the accident, which occurred while a rooftop television antenna was being removed and came in contact with the defendant's 7,500 volt power transmission lines passing over the house, the antenna was replaced approximately as near to the power lines as before, and (c) refused to allow the plaintiff to testify whether he would have acted as he did had he known of the danger inherent in the radio wire. The condition of wires in anotmer location (which as a matter of fact were not contended to have caused any injury or to have had any relevance to the case on

trial except that they were maintained by the same company) was obviously properly excluded. Since it is obvious that no person with knowledge that the persons he was trying to assist were already dead, and that the result of his act in trying to remove the wire from their bodies would be electrocution and loss of a limb would insist on repeating the act, and any statement he might make on the subject would be in the nature of a self-serving declaration, there was no error in excluding this testimony even though some similar question might have been relevant to show lack of a realization in catching hold of the insulated television line (not the uninsulated power line) of the attendant danger, as going to the question of the degree of care or the recklessness of the plaintiff under the circumstances.

In the third instance, may the defendant on cross examination of one of the plaintiff's witnesses show that after the tragedy the television aerial was actually replaced in the same location in relation to the power lines as it was before? The rule is that evidence .of subsequent repairs following an injury is not admissible on the trial of negligence cases, the usual purpose of such evidence being as a basis for drawing the inference that the defendant thereby impliedly admitted his realization of negligence. *Lacy v. City of Atlanta,* 110 Ga. App. 814 (140 SE2d 144); *Atlantic C. L. R. Co. v. Sellars,* 89 Ga. App. 293 (79 SE2d 35); *Flint River Cotton Mills v. Colley,* 71 Ga. App. 288 (30 SE2d 426); *Savannah, F. & W. R. Co. v. Flanagan,* 82 Ga. 579 (9 SE 471, 14 ASR 183). If the testimony is relevant to some other issue, it is admissible. Reddick v. White Consol. Industries, 295 FSupp. 243. The minor plaintiff here had nothing to do with placing the television antenna either before or after his injuries, nor did he have any control over the premises where it was placed. While the testimony was elicited from the plaintiff's mother who was on cross examination, it does not appear that it had any valid place in the examination either for impeachment purposes or as a part of a thorough and sifting cross examination since she, too, had no control over where the antenna was placed. Its relevance to any issue in the case is accordingly extremely dubious, even though this alone might not constitute a sufficient cause for reversal.

4. That the alleged negligence of the defendant power company was a fact question and did not demand a verdict as a matter of law see *Lamar Elec. Membership Corp. v. Carroll,* 89 Ga. App. 440 (79 SE2d 832); *Reighard v. Ga. Power Co.,* 119 Ga. App. 640 (168 SE2d 639). At the time of the plaintiff's injury he was a minor 17 years of age living in his mother's home and, so far as the evidence shows, had no particular knowledge of electricity or of the uninsulated 7,500 volt power lines which ran over the roof of the house. The lowest of the wires running over the rooftop, which apparently had no current, was 58 inches above the roof; the second wire was just over nine feet. The television aerial mast was over 36 feet in length. Evidence established that an employee of the company visited the house approximately every month; therefore, regardless of negligence in erecting the mast (none of which could be charged to the plaintiff) and whether or not the men working on the rooftop lowering the mast had knowledge that the wires were uninsulated and carried a heavy electrical charge, the defendant was also on notice that the high mast, with its four-foot horizontal antenna at the end, was in proximity to the wires. The two men attempting to take down the mast allowed it to come in contact with the charged wires, were electrocuted and fell to the ground. A wire lay on the body of one of the men, an uncle by marriage of the plaintiff whom he knew well and who seemed to be still alive. The boy had been working under his automobile in the yard; he ran to the side of the house, restrained his mother from jumping off the porch, and then, thinking that it was necessary to remove the electricity from the body he attempted to pull or knock aside the flat insulated antenna connecting wire which lay on the body, from the end of which sparks were jumping. Due to the heavy load of electricity from the power lines with which the antenna was still in contact, the insulation was insufficient; the plaintiff was thrown to the ground, and the wire landed on his leg inflicting such severe burns before the mother could knock it aside with a stick that the leg had to be amputated.

A part of the court's instructions, the underlined portion of which is enumerated as error, is as follows: "I further charge you that

if you find from the evidence that the plaintiff was attempting to rescue other persons, and provided you have first found that the peril was caused by the defendant's negligence in one or more particulars, you would not be authorized to find negligence on the part of the plaintiff unless you first find his actions were either rash, reckless or wanton. . . *I further charge you that one who knowingly and voluntarily takes a risk of injury to his person the danger of which is so obvious that the act of taking such risk in and of itself amounts to a failure to exercise ordinary care and diligence for his own safety, cannot hold another liable for damages from injury thus occasioned.* Thus, if you should find that Edward Elmer Flowers did on the occasion described in the petition, knowingly and voluntarily take a risk of injury to his person, the danger of which was so obvious to him that the act of taking such risk, in and of itself, amounted to a failure to exercise ordinary care and diligence for his own safety, then, the plaintiff in this case cannot recover, even though the defendant may have been negligent as alleged in the petition. Now, the defendant further contends that the plaintiff did not exercise ordinary care to avoid the consequences of defendant's negligence. If the plaintiff, by the exercise of ordinary care, could have avoided the consequences to himself because of the defendant's negligence, the plaintiff would not be entitled to recover."

A greater risk of one's person to save life is justified than in the effort to save property only. *Rushton v. Howle,* 79 Ga. App. 360 (53 SE2d 768). The negligence which causes injury or danger to another is negligence also as to the rescuer, and the latter in an effort to save human life will not be barred on the ground that he did not exercise ordinary care for his own safety or even that he assumed the risk of injury to himself unless his actions are so imprudent and beyond what a person in the same circumstances might be expected to do that they must be classified as reckless or wanton. *Blanchard v. Reliable Transfer Co.,* 71 Ga. App. 843 (32 SE2d 420). Any means reasonably appropriate to the purpose may be used. There is no issue involved as to assumption of risk, since the doctrine of rescue necessarily contemplates an assumption of the risk inherent in

the peril created by the defendants' negligence and allows recovery for injuries thereby incurred, for the reason that the defendants were charged with the duty of anticipating that their negligence might attract rescuers who would necessarily have to assume the dangers inherent in the situation. *Walker Hauling Co. v. Johnson,* 110 Ga. App. 620 (139 SE2d 496). While it is true that one way the cases have phrased this problem is to say that short of reckless and wanton disregard of the imminent consequences one who attempts a dangerous act to save the life of another is in fact acting within the limits exercised by a person of reasonable prudence *under the circumstances,* and thus apparently to equate "ordinary care" with "lack of wantonness" it is nevertheless true that one does not use ordinary care in the ordinary sense of the word when one jumps in front of an automobile to rescue a child, or into a flooding river to rescue a drowning man, or attempts with his hand to knock aside an apparently insulated line which he nevertheless knows contains electricity. But to give the jury these two sets of rules in conjunction without explaining or distinguishing between them was, in the circumstances of this case, to load the charge strongly in favor of the defendant. "Ordinary care" as the term is generally used, is not the criterion in this case so far as this plaintiff was concerned. It might well have misled the jury, especially in connection with the charge on the assumption of risk doctrine, to apply a higher standard of care to the plaintiff's actions than the circumstances warranted, and since this issue, together with whether the defendant was negligent in maintaining its lines as it did, are at the very center of the case, and both are extremely close on the facts, the charge constitutes reversible error.

*Judgment reversed and remanded for new trial. Jordan, P. J., Pannell, Quillian and Evans, JJ., concur. Bell, C. J., Hall, P. J., Eberhardt and Whitman, JJ., dissent.*

ARGUED MARCH 4, 1970—DECIDED JUNE 30, 1970—
REHEARING DENIED JULY 24, 1970—

*Robert L. Cork, Jack J. Helms, Robert B. Sumner,* for appellant.

*Ben T. Willoughby, Young, Young & Elberbee, Cam U. Young,* for appellee.

HALL, Presiding Judge, dissenting to the judgment of reversal. In my opinion the judgment should be affirmed.[1] The objection to the charge in the trial court was that it required the plaintiff to exercise "ordinary care" for his own safety and that in view of the fact this was a rescue operation the plaintiff's duty was that "of slight care." Until this case that had never been the law.

The court charged that the jury "would not be authorized to find negligence on the part of the plaintiff, unless you first find

---

[1] While not involved in this judgment of reversal, it is important also to caveat the statement in the majority opinion that since it appeared from the evidence that an employee of the company visited the house approximately once a month, the defendant was on notice of the high mast on the roof with the four-foot horizontal antenna at the end. The only evidence in the record relative to visits to the house by an employee relate to trips made *for the purpose of collecting the monthly bills* for current used. Notice to an employee in that frame of reference is not notice to the company. It has been so held relative to one whose duties were to collect in *Camp v. Southern Bkg. &c. Co.,* 97 Ga. 582 (3) (25 SE 362); to the motorman and conductor on a street car who knew of a live sagging wire in *Read v. City &c. R. Co.,* 115 Ga. 366 (2) (41 SE 629); a meter reader and line foreman having knowledge of a defective switch in *Georgia Power Co. v. Kinard,* 47 Ga. App. 483, 487 (170 SE 688); a railroad section-master having knowledge that the bridge-keeper's wife stayed with her husband in a small house provided to protect him from the weather and had to cross a trestle to get there, in *Comer v. Hill,* 101 Ga. 340 (28 SE 856); a policeman having knowledge of defective street conditions, in *City of Columbus v. Ogletree,* 96 Ga. 177 (2) (22 SE 709); an employee of the railroad who had knowledge of a defective culvert, but whose duties did not encompass the repairing, maintenance, etc., of the road, in *Central of Ga. R. Co. v. Americus Const. Co.,* 133 Ga. 392 (2) (65 SE 855); a railroad doctor who had treated an injured party with whom the railroad made settlement before suit was filed, in *Lumpkin v. L. & N. R. Co.,* 136 Ga. 135 (70 SE 1101).

his actions were either rash, reckless or wanton." It defined ordinary care as "that reasonable care and caution which an ordinarily cautious person would exercise under the *same or similar circumstances.*" (Emphasis supplied.) It then charged that the plaintiff must "exercise ordinary care and diligence for his own safety." Considering the charge as a whole I see no reversible error. "We should not assume that the jury paid no attention to some portions of the charge; but on the contrary the presumption is that the jury pays attention to and correctly applies all the charge." *Stanley v. Squadrito,* 107 Ga. App. 651, 658 (131 SE2d 227). "A charge torn to pieces and scattered in disjointed fragments may seem objectionable, although when put together and considered as a whole, it may be perfectly sound." *Mendel v. Pinkard,* 108 Ga. App. 128, 134 (132 SE2d 217). As Justice Bleckley said in a criminal case some ninety years ago: "The charge of the court, like all other deliverances in the human language, is to be construed together as one whole, and when one part of it plainly tempers and modifies another, and the ultimate sense and impression are correct, the true standard of practical sufficiency is attained." *Cox v. State,* 64 Ga. 375 (12).

The case relied upon in the majority opinion (*Walker Hauling Co. v. Johnson,* 110 Ga. App. 620, 624 (139 SE2d 496) recognized that the duty is that of "ordinary" rather than "slight" care *under the circumstances:* "Ordinary care for their own safety under the circumstances, short of rashness and recklessness." See also *Slappy v. Ga. Power Co.,* 109 Ga. App. 850, 854 (137 SE2d 537): the standard of conduct of a reasonable man in like circumstances. *Code* § 105-201.

The full test is as follows: "one is not guilty of contributory negligence in exposing himself to danger of injury in order to rescue another from imminent danger of personal injury or death if, under the same or similar circumstances, an ordinarily prudent person might so expose himself, or, as often expressed, if the act of intervention is not performed under such circumstances as would make it rash or reckless in the judgment of ordinarily prudent persons . . . Both an impulsive rescuer and a deliberate rescuer are required to comply with the standard of care of a reasonably prudent person in order to recover for injuries sus-

tained in the attempted rescue. In determining whether one making or attempting such a rescue exercised ordinary care, all the surrounding circumstances are to be considered, including the existing emergency, the alarm, excitement, and confusion usually present, the uncertainty as to the means to be employed, the necessity for immediate action, and the liability to err in the choice of the best course to pursue." 65A CJS 83, 84, Negligence, § 124. See also 2 Harper & James, The Law of Torts, § 16.11. The same point has been made by Judge Powell: the jury must "compare his conduct with the conduct of an ordinarily prudent man *under similar circumstances . . .* Such questions are for the jury." *Atlantic C. L. R. Co. v. Daniels,* 8 Ga. App. 775, 782 (70 SE 203).

The majority opinion now rejects the above test on the ground that it *loads the charge in favor of the defendant.* Does this mean that the above cited cases have been overruled? Have the words "ordinary care under the circumstances" been prohibited in all cases involving the doctrine of rescue and emergency?

I am authorized to state that Chief Judge Bell and Judges Eberhardt and Whitman concur in this dissent.