33576. ROTHBERG *v.* MANHATTAN COIL CORP.

DECIDED JUNE 12, 1951.   REHEARING DENIED JULY 30, 1951.

530

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* for plaintiff.
*Israel Katz, I. T. Cohen,* for defendant.

TOWNSEND, J. (After stating the foregoing facts.) The petition as finally amended set out a contract to procure a buyer for the defendant's real property; the commission to be charged upon completion thereof; the fact that the plaintiff was a licensed broker entitled to the commissions charged, and that he did procure one ready, willing and able to purchase the property on the terms stipulated. A real-estate broker is entitled to collect his commission under these circumstances, whether or not the sale is actually consummated. See Code, § 4-213. In consequence, the sole question for decision was whether or not the defendant was bound under the terms of the contract, and this in turn depends upon the authority of the alleged agent to bind the corporation in this transaction.

The methods of pleading agency so as to hold the principal responsible in tort actions are set out in *Conney* v. *Atlantic Greyhound Corp.,* 81 *Ga. App.* 324 (58 S. E. 2d, 559). The same rules are applicable in pleading agency in actions sounding in contract. In his original petition here the plaintiff used the method set out in headnote 2 as follows: "Another way of pleading agency so as to make the alleged principal responsible for the wrongful acts of the agent is to allege by a simple direct statement that the defendant corporation by its agent committed the wrongful act." The petition alleges that the defendant corporation acted through I. M. Weinstein, "he at said time and place having full authority to act for the defendant in the premises to procure an offer to purchase real estate occupied and owned by the defendant. . ." The demurrer, which was sustained by the trial court in the first instance, contended that this allegation constituted a conclusion of the pleader, notwithstanding the fact that it conforms to the proper method of alleging agency under headnote 2 of the *Conney* case, supra. The plain-

tiff, however, failed to except to this ruling, but on the contrary sought to amend his petition so as to conform to the method of alleging agency as set out in headnote 1 thereof as follows: "One way of pleading that an agency existed so as to make the alleged principal responsible for the wrongful acts of the agent is by pleading nothing except facts as they really exist or, by legal fiction or presumption, are deemed to exist. It is, generally speaking, unnecessary to allege matters of law, for judges are always presumed to know judicially what the law is. However, in this method of pleading, if the preliminary or special facts by which the pleader claims that the relationship of principal and agent is established so as to make the employer responsible for the wrongful acts as a matter of law, the pleader may plead his legal conclusions in the nature of general allegations for the purpose of obtaining a decision of the court below. A demurrer would then raise the question whether the conclusions were good in law." Thereafter, a demurrer was interposed to the petition as amended. This opened the entire pleadings for a fresh adjudication on the merits, whether the petition was subject to demurrer in the first instance or not. On the hearing of such second demurrer the petition must be considered as amended without regard to its status before the amendment. See *Tingle* v. *Maddox*, 186 *Ga.* 757 (2) (198 S. E. 722); *Green* v. *Spires*, 189 *Ga.* 719 (7 S. E. 2d, 246). It follows therefore that, while the allegation of the petition before amendment, which was simply to the effect that the agent had full authority to act, was not subject to demurrer as being a conclusion of the pleader, because at that time it did not detail facts upon which this conclusion was reached, yet since amendment the petition must be examined with a view to determine whether the detailed facts now alleged therein support the conclusion that the agent acted with authority. In the *Conney* case, supra, at page 327, it is held as follows: "It is, generally speaking, unnecessary to allege matters of law, for judges are always presumed to know judicially what the law is. However, in this method of pleading, if the preliminary or special facts by which the pleader claims that the relationship of principal and agent is established so as to make the employer responsible for the wrongful acts as a matter of law, the pleader may plead his legal conclusions in

the nature of general allegations for the purpose of obtaining a decision of the court thereon. A demurrer would then raise the question whether the conclusions were good in law. It is in cases where this form of pleading is adopted by the pleader that many of the Georgia cases use the expression where general allegations setting up that a named person is agent for another named person (that is, agency) are followed by specific detailed averments, and such averments negative or contradict such general allegations, or if the pleader alleges the ultimate fact that a named person was the agent of another but sets up special or preliminary facts by which he claims to establish such relationship, and if these special facts fail to establish such general allegation of agency, and then the pleader follows with the general allegation that the agent is acting within the scope of his employment or service, this latter general allegation is treated as a conclusion of the pleader and as having been made in order to obtain a decision as to whether the act was committed in the scope of the agency or service. In such a form of pleading the general allegations setting up agency will yield to specific detailed averments."

The amendment set up a series of allegations as to the course of conduct pursued between Weinstein and the defendant corporation which affirmatively showed that Weinstein had no express authority from the corporation to enter into the contract sued upon and that no ratification of his conduct had been had subsequently thereto, but which attempted to allege facts sufficient to hold the defendant on the theory that Weinstein had implied authority to make such a contract.

In *Hale-Georgia Minerals Corp.* v. *Hale,* 83 *Ga. App.* 561 (63 S. E. 2d, 920) it is held as follows: " 'Proof of a contract with a corporation includes proof of the authority of the agent purporting to act for it to make the alleged contract, or proof that the contract as made was subsequently ratified by the corporation.' *Lindale Co-operative Store* v. *Ailey,* 32 *Ga. App.* 30 (2)." "Such authority may be inferred from a course of dealing." "The president of a corporation, merely by virtue of being such, has no power to bind the company by a contract." It has further been held that a general manager of a corporation likewise has no authority to make a sale of any part of the physical

property of the corporation without express authority first being delegated to him for that purpose. See *Nunez Gin & Warehouse Co.* v. *Moore*, 10 *Ga. App.* 350 (73 S. E. 432); *Ware & Harper* v. *Atlanta Coffee Mills Co.*, 16 *Ga. App.* 749 (86 S. E. 47). In consequence, the allegation that the agent acted with the authority usually possessed and exercised by a president and general manager show no authority on his part to bind the defendant corporation on the contract in question. The fact that he was liable as an endorser on the corporation's note is no evidence of implied authority to sell the property pledged as security thereon; indeed, as contended by counsel for the defendant, it might be evidence that his position was adverse to that of the corporation, and that he desired a sale for personal reasons to reduce his potential liability as endorser.

So far as any general course of dealings between Weinstein and the corporation is shown, the amendment indicates that the corporation took action to formally approve his acts from time to time. That he was a principal stockholder gives him no authority to sell the property of the corporation. It is not alleged that the board of directors either expressly authorized him to procure a purchaser of the corporate property or that they subsequently met and approved his action. The allegation that he was the "alter ego" of the corporation, under these circumstances, is not supported by the special facts pleaded. Further, it is alleged only that his implied authority extended to the making of "any and all ordinary contracts in behalf of the corporation." It is not alleged that this was an ordinary contract, or that the corporation ordinarily bought and sold real estate. It appears that the premises were occupied by the defendant corporation, and the sale of the property in which a corporation carries on its business activities is not as a general rule an ordinary or routine business transaction in the accepted sense.

*Garmany* v. *Lawton*, 124 *Ga.* 876 (53 S. E. 669), cited by the plaintiff, is a case where the corporation president who mortgaged its property had for a period of time carried on all the company business with the acquiescence of its stockholders, and on numerous occasions bought and sold the corporate property, so that the acquiescence of the stockholders in these former transactions gave rise to implied authority on his part to con-

tinue to buy and sell or mortgage such property. Where a corporate agent is held out as having authority to make a specified type of contract by ratification of similar contracts made by him over a period of time, such authority will be implied in the absence of anything to the contrary. See *Fitzgerald Cotton Oil Co.* v. *Farmers Supply Co.*, 3 *Ga. App.* 212 (59 S. E. 713). But authority to do an act as agent will not be implied from the doing of totally distinct and different acts on behalf of the principal. See *Collins & Toole* v. *Crews*, 3 *Ga. App.* 238 (59 S. E. 727). An express agency for a specified purpose includes all acts reasonable and necessary to effectuate that purpose, but does not include other acts which, although they may arise in the course of the transaction, are merely collateral to it. See *Wise* v. *Mohawk Rubber Co.*, 23 *Ga. App.* 255 (98 S. E. 100); *Terry* v. *International Cotton Co.*, 138 *Ga.* 656 (75 S. E. 1044); *Hood* v. *Hendrickson*, 122 *Ga.* 795 (50 S. E. 994). Even one with express authority to do all acts usual and necessary in the ordinary course of the company's business has no authority to do any act over and beyond the ordinary course of business. See *Pickens Co.* v. *Thomas*, 152 *Ga.* 648 (111 S. E. 27). Agency by express contract is limited to the authority delegated. Agency by implication rests merely upon rational inference, and the authority to be implied from acquiescence in acts usual and ordinary in the course of business will not include other acts of a collateral or dissimilar character. Nothing in the amended pleadings gives rise to the inference that the corporation gave Weinstein authority, express or implied, to sell the property in which it was carrying on its business, or to contract with a broker to procure a buyer for the property, which amounts to the same thing, in that it would impose the same liability on the corporation. See *Brooke* v. *Cartersville Chero-Cola Co.*, 23 *Ga. App.* 671 (99 S. E. 150):

The preliminary or special facts by which the pleader claims that the alleged agent of the corporation was authorized to act for the corporation in the premises fail to support the legal conclusions that such person was so authorized.

The judgment of the trial court sustaining the demurrer and dismissing the petition as amended is without error.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*