### 34046. MILLENDER *v.* LOOPER.

DECIDED JULY 3, 1952.

432

*Mitchell & Mitchell*, for plaintiff in error.
*Pittman, Hodge & Kinney*, contra.

SUTTON, C.J.  ■ The first special ground of the plaintiff's motion for a new trial complains of the trial judge's charge to the jury, that "The effect of the defendant's answer is to place upon the plaintiff the burden of establishing his right to recover by a preponderance of the evidence," which followed his summary of the pleadings, in which he charged, in part, that the defendant in his answer admitted renting space in his warehouse to the plaintiff for $25 per month and issuing receipts to the plaintiff for 65 rolls of sheeting, but further contended that all of the rolls of sheeting stored had been returned to the plaintiff. The trial judge charged that the latter contention was the main and principal issue in the case.

The plaintiff contends that the charge was incorrect because the jury were instructed that the burden of refuting the defendant's special defense was on the plaintiff; because the charge did not correctly state where the shifting burden of procedure was and placed a greater burden than the law required upon the plaintiff, namely, that of showing by a preponderance of the evidence that, under the defendant's special plea, the defendant would not be entitled to a verdict in his favor; and because the plaintiff's pleadings and evidence made out a prima facie case, shifting the burden of procedure to the defendant to prove by a preponderance of the evidence his affirmative defense, that the plaintiff or his authorized agents had received back all of the sheeting stored in the defendant's warehouse. It is contended that the charge was confusing and misleading because the court later charged that the burden of proof was on the defendant to

show that he exercised ordinary care in keeping the property stored, and to establish his other defenses by a preponderance of the evidence, which was inconsistent with and contrary to the charge excepted to.

The chief issue in the case, as stated by the trial judge, was whether the rolls of sheeting sued for had been returned to the plaintiff or his employees, that is, whether the defendant as a bailee had performed his obligation under the bailment contract to dispose of the goods bailed according to the plaintiff bailor's order. This issue was made by the defendant's denial of the allegations in the petition that he had failed to return the goods on the plaintiff's demand, and also by the allegations of the answer that the defendant had redelivered to the plaintiff, or the plaintiff had taken, all of the sheeting, and it is this defense that the plaintiff refers to as a special defense in his motion.

"In all cases of bailment, after proof of loss, the burden of proof is on the bailee to show proper diligence." Code, § 12-104. The burden was on the plaintiff, however, to prove the loss, destruction, disappearance of, or injury to the property while it was in the defendant's possession and exclusive control, before the presumption that the loss was occasioned by the defendant's negligence would arise. The charge complained of properly placed the burden on the plaintiff to establish by a preponderance of the evidence the fact of the loss of the goods while in the defendant's possession.

The trial judge's charge, that the burden was on the defendant to establish his diligence, was not contradictory to the charge excepted to; for, if the plaintiff had proved by a preponderance of the evidence, the loss of the goods while in the defendant's possession, then the burden was on the defendant bailee to show that the loss was not occasioned by his negligence. Code, § 12-104, supra; *Atlantic Coast Line R. Co.* v. *Barksdale*, 32 *Ga. App.* 643 (1) (124 S. E. 362); *Walker Electrical Co.* v. *Sullivan*, 79 *Ga. App.* 13 (52 S. E. 2d, 477). The charge complained of in special ground 1 was not erroneous for any of the reasons assigned.

■ Special ground 2 of the motion assigns error on the following charge of the court to the jury: "I charge you further,

gentlemen, that the defendant in this case would not be liable to the plaintiff for the value of any goods which may have been stored in the warehouse of the defendant by the employees of the plaintiff, which may thereafter have been removed from the warehouse by the plaintiff's own employees or agents, who at the time of such removal, continued in his employment, and were charged with such duties in regard to the storing and removing of the stored goods." It is contended that this charge was error because it removed from the consideration of the jury the question of whether or not the defendant exercised ordinary care in allowing the removal of the sheeting from his warehouse by the plaintiff's agents without requiring a surrender of the warehouse receipts; and the movant insists that the defendant was required to have done this in the exercise of ordinary care. The movant also urges that the charge in effect instructed the jury that, if the plaintiff's employees continued in his employment after their removal of the sheeting, then the plaintiff could not recover.

"The bailee's obligation to deliver or account for the property can be satisfied only by a delivery to the person entitled to it, who is ordinarily the bailor himself, someone claiming under him, or one duly authorized on his behalf to receive it." 6 Am. Jur. 320, Bailments, § 210. "A warehouseman is justified in delivering the goods . . to one who is: (a) The person lawfully entitled to the possession of the goods, or his agent." Code (Ann. Supp.), § 111-411. The charge complained of stated that the defendant bailee would not be liable for the value of goods which had been removed from the warehouse by the plaintiff bailor's employees or agents charged with duties of removing the goods, and was therefore a correct statement of the law. It is not contended that any rights of third parties were violated by the defendant's failure to require the surrender of the receipts, and, therefore, the defendant's failure to require the receipts would be irrelevant in an action by the bailor against the warehouseman, provided that the property was delivered to the agent of the bailor as stated in the charge complained of. And if the bailor's agents or employees who removed the goods were "charged with such duties," it would also be immaterial whether or not they continued in the employment of

the plaintiff bailor after they had removed the sheeting, so long as they were in his employment at such times as they removed the goods. The inclusion of this condition by the court in the stated proposition of law was not harmful or prejudicial to the plaintiff, and special ground 2 shows no error.

3. Special ground 3 of the motion assigns error upon the charge complained of in special ground 2, and in particular upon the following excerpt therefrom: ". · . plaintiff's own employees or agents, who at the time of such removal, continued in his employment, and were charged with such duties in regard to the storing and removing of the stored goods." The movant avers that this was an expression of opinion by the court as to what the evidence showed the duties of the plaintiff's employees were in regard to removing the sheeting; that it instructed the jury that the evidence showed that certain employees were generally charged with such duties and could act for the plaintiff in the absence of specific instructions from the plaintiff; that said excerpt removed from the jury's consideration the question of whether or not the plaintiff's agents had express authority from him to remove the stored sheeting on occasions other than the three times when the plaintiff admitted that they had such authority; and that the charge removed from the jury's consideration the question of whether or not these employees, at the time of the removal of the goods, were acting in the prosecution of the plaintiff's business and in accordance with his express instructions, or whether they were removing the sheeting as a personal venture unconnected with the plaintiff's business and against his expressed instructions.

The charge complained of was not an expression of opinion as to what the evidence showed, for the whole proposition was conditional: the instruction was to the effect that the defendant *would* not be liable for goods which *may* have been stored and which *may* have been removed under certain conditions. This ground of the motion does not complain that there was no evidence to support the charge given.

The other reason advanced as to why the charge was error is that the plaintiff bailor would not be bound by the delivery of the goods to his agents or employees unless they were expressly and specifically instructed by him to remove sheeting from the

.warehouse, but this is not a valid reason or correct as a theory of law. "The authority of an agent in a particular instance need not be proved by express contract; it may be established by the principal's conduct and course of dealing." *Armour Fertilizer Works* v. *Abel*, 15 *Ga. App.* 275, 280 (82 S. E. 907). Also see *Sinclair Refining Co.* v. *First National Bank*, 45 *Ga. App.* 769 (1) (165 S. E. 860); *Commercial Credit Corp.* v. *Noles*, 85 *Ga. App.* 392 (69 S. E. 2d, 309), and cases cited. This ground of the motion shows no error.

4. The plaintiff introduced warehouse receipts issued by the defendant, which showed that he had stored 65 rolls of cotton sheeting in the defendant's warehouse, over a period from December 8, 1947, to June 10, 1948. The plaintiff admitted having withdrawn 5 rolls and having received back 32 rolls in the latter part of July, 1948. The plaintiff identified 28 rolls as those which the defendant failed to return to him, and there was evidence as to their market value.

The defendant introduced evidence tending to show that he had used diligence in protecting the property; that he had locked the warehouse in which the goods were stored every night; that he or his employees were there at all times during the day when the warehouse was open; that he had not removed any of the sheeting nor had his employees done so; and that there were no visible indications that the warehouse building had ever been broken into. There being some evidence of diligence on the part of the bailee, the verdict for the bailee was authorized. *Pickering* v. *Anderson*, 12 *Ga. App.* 61 (76 S. E. 754); *Bailey* v. *Insurance Co. of North America*, 80 *Ga. App.* 521 (56 S. E. 2d, 848).

The testimony of numerous employees of the defendant was to the effect that Homer Smith and certain other employees of the plaintiff were the only persons who had removed any of the rolls of sheeting. Walter McGill, who was employed by the plaintiff at the time the sheeting was stored with the defendant, testified that he had helped Homer Smith remove 13 or 14 rolls of sheeting, which they carried to the plaintiff's plant where the rolls were used, and the plaintiff testified that McGill went occasionally to the warehouse to take out the sheeting. The other witnesses who had been working in the warehouse testified

that they had seen Homer Smith take out one to three rolls at a time, on from three to ten different occasions. While the plaintiff contends that this evidence was not sufficiently definite to overcome his exact description of the rolls by invoice number and number of yards contained, we think that the evidence was sufficient to authorize the jury to find that the 28 missing rolls of sheeting had been delivered to Homer Smith.

As to Smith's authority, although the plaintiff denied that Smith was authorized to remove the sheeting except when he was specifically instructed to do so, the plaintiff also testified as follows: "When this sheeting was being taken in the warehouse, Homer Smith was working for me. As to who was left in charge of the plant when I wasn't there, well, Mr. Smith and my brother Sam used to have authority to do this, and the girl in the office. My brother Sam runs a store uptown. As to the title that Homer Smith had, well, he was superintendent of the sewing room, boss of the sewing room. That's right, Homer Smith was my superintendent in my plant until after this suit was filed. As to whether I don't deny that Homer Smith was my superintendent while this sheeting was being put in Looper's warehouse and taken out, well, no sir, he was working. Yes, I testified on the former trial that Homer Smith was my top man."

J. J. Copeland, of the Bank of Dalton, testified in part as follows: "As to what conversation did I have with Ben Millender with respect to Homer Smith, well, he said that Homer Smith was an employee of Standard Chenilles and that he had charge of directing this sheeting to the warehouse; that Homer Smith was in charge when Ben had to be out of town. As to whether he told me what Homer Smith's position was there at the plant, well, I don't know that he used the actual title. As to whether he told me who was in charge of getting the sheeting out, well, that Homer Smith was, of this particular part of the work."

Furthermore, the plaintiff testified: "I didn't render to Mr. Looper [the defendant] any receipt when I took out those five rolls I mentioned. I didn't think about it; he never asked for them, and I never sent them over there. Once I told Homer Cantrell to go out and get some of the boys to go down and get two rolls of sheeting out. No, sir, I didn't give him a receipt to give to John Looper; I told him to go down there and get two rolls of sheeting, and told him the roll numbers to get."

The defendant testified that he had made the arrangements for the storage of the sheeting with Homer Smith, and not with the plaintiff directly, and he further testified: "As to what agreement did I have with Homer, if anything, about the space, well, he followed me back in the warehouse, and we checked up and found a space about what he wanted to use, and it was about 25 or 30 feet that he wanted to use. Yes, he was to look after putting it in there and look after it and without any trouble to us. As to what was the understanding about who was to look after the putting in of the sheeting and the taking out of the sheeting, well, Homer Smith was the only man that we had any dealings with at all; we couldn't refuse the man the sheeting when he came for it; he'd put it in there. Certainly not; we didn't think anything was wrong when he came and took sheeting away from there; we took him at face value."

The jury was authorized to find from the evidence that the plaintiff, by his course of dealing with the defendant, made it appear that Homer Smith was his general agent for the storing and removal of the cotton sheeting in the defendant's warehouse; that the defendant relied on the apparent agency thereby created; and that the plaintiff was estopped to deny that Smith was authorized to receive the stored sheeting, without the production of the warehouse receipts, which the plaintiff had not even given to Smith when he instructed Smith to remove some of the sheeting.

The verdict being supported by the evidence, and no error being shown by the special grounds of the motion, it was not error to deny the motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*