**E. EDELMANN & COMPANY, Plaintiff,**

**v.**

**E. N. AMOS and Transonic Corporation, Defendants.**

**Civ. A. No. 9245.**

United States District Court
N. D. Georgia,
Atlanta Division.
Jan. 24, 1967.

**106**

Lipshutz, Macey, Zusmann & Sikes, Atlanta, Ga., for plaintiff.

Phillips, Johnson & Daniel, Atlanta, Ga., for defendant, Amos.

Swift, Currie, McGhee & Hiers, Atlanta, Ga., for defendant, Transonic Corp.

HOOPER, District Judge.

## STATEMENT OF THE CASE.

Plaintiff corporation over a period of time sold and delivered merchandise to a corporation known as Transco-Southern, which was a wholly owned subsidiary of defendant Transonic Corporation (formerly known as Transcontinental Industries, Inc.). The delivery and the value of the goods in question is not in dispute. The sole question in the case is whether defendant Transonic Corporation, by and through E. N. Amos, its Vice-President, executed a valid guaranty in favor of the plaintiff. Defendant Amos does not contest his liability under the guaranty, but defendant Transonic Corporation vigorously asserts that Amos, its Vice-Presi-

dent, did not have authority to execute the guaranty in question, and that it, the said defendant, did not ratify the same.

Each party made a motion for summary judgment supported by affidavits, but this Court was unwilling to risk a decision on the affidavits and set it down for a plenary hearing with witnesses.

The parties have stipulated that there are four issues in the case, but perhaps some of them slightly overlap. The Court, however, will follow the issues as stated by the parties, giving the facts and conclusions of law as to each separate issue.

(1) DID THE PLAINTIFF RELY UPON THE SUBJECT GUARANTY WHEN IT SHIPPED GOODS ON OPEN ACCOUNT TO TRANSCO-SOUTHERN, INC., ON AND AFTER DECEMBER 20, 1963?

The complaint alleges that on or about November 7, 1963, defendant Transonic Corporation (formerly Transcontinental Industries, Inc.) agreed in writing to be liable to plaintiff for any and all indebtedness then due, or to become due, to plaintiff from Transco-Southern, Inc.

The letter expressing this guaranty was dated November 7, 1963, on a letterhead of Transcontinental Industries, Inc. (now the defendant Transonic Corporation), signed by E. N. Amos as Vice-President of said defendant, and written to E. Edelmann Corporation, attention Mr. Williams, credit manager, and reads as follows:

"This letter shall act to advise that the writer and Transcontinental Industries hereby guarantees any amounts due, or that may become due to your company. This letter of guaranty shall be of full force and effect until revoked by an officer of Transcontinental Industries, but cannot be revoked while any balance is outstanding."

It appears that Mr. Williams, plaintiff's credit manager, was unwilling to make shipments to Transco-Southern (wholly owned subsidiary of defendant) without such a guaranty. Defendant

having stated to Williams, however, over the telephone, that the guaranty was being mailed, plaintiff shipped the first order for the reason as stated by Williams, that it could have been stopped had the guaranty not reached the plaintiff as stated over the telephone. The guaranty was received and the order was delivered.

Defendant contends, however, that subsequently plaintiff wrote to defendant requesting resolution of directors or stockholders authorizing the writing of this guaranty by Amos. It is true that counsel for plaintiff did suggest the writing of this letter; it was written, and no reply was received. It also appears that plaintiff continued to make shipments to defendant without obtaining the resolution. The tone of the letter from Williams to defendant indicated he was asking for this resolution merely because counsel had suggested the same. Williams apparently was satisfied already with the authority of Amos, and in continuing to make the shipments was still apparently satisfied as to Amos's authority. This Court does not find that Williams did not continue to rely on this guaranty by making such shipments, but on the other hand finds that he did rely on the guaranty throughout the transaction.

(2) The second issue is as follows:

"IF THE COURT FINDS THAT THE PLAINTIFF DID SO RELY, IT MUST THEN DECIDE WHETHER DEFENDANT AMOS, ACTING AS VICE-PRESIDENT, OR SECRETARY-TREASURER, OF TRANSONIC CORPORATION, OR IN ALL THREE CAPACITIES, HAD CORPORATE AUTHORITY TO BIND TRANSONIC CORPORATION TO THE PLAINTIFF AS A GUARANTOR OF THE DEBTS OF TRANSCO-SOUTHERN, INC."

On this issue the Court finds that Amos, acting as Vice-President, of Transonic Corporation, had authority to bind said corporation to the plaintiff as a guarantor.

In the first place, Amos was a vice-president of defendant corporation, and under the by-laws of said corporation it was provided that the president and the secretary must both sign certain formal contracts under seal, as deeds, notes, etc., but it was provided the vice-president could sign ordinary contracts. While one or more of defendant's witnesses testified that Amos had very little authority to act for the defendant, the evidence shows that in the purchase of goods he had a rather free hand and that his acts in connection therewith were not only not supervised and controlled by his superior officers, but for the most part, unknown to them. Transcontinental (later Transonic) was a parent company, there were several subsidiaries, and defendant testifies Transco-Southern, a wholly owned subsidiary, was created as a selling agency for other subsidiaries to sell its manufactured goods. The goods of Edelmann & Company, however, were received by Transco and sold by Transco, or else delivered by Transco to Transonic, the evidence on this point being vague. At the time the guaranty was given Transco-Southern was a new company with no sufficient credit rating, and not only plaintiff but other shippers had declined to sell it without such a guaranty. Guaranties with proper resolution were given to three other shippers.

This Court finds that Transco-Southern could not obtain the goods in question without a guaranty; that Amos, vice-president of Transcontinental, was entrusted with the duty of making purchases in behalf of Transcontinental and said subsidiaries; that it was to the advantage of Transcontinental that its wholly owned subsidiary succeed in making purchases; that in order to carry out his duties and obtain such goods it was necessary to execute the guaranty in behalf of Transcontinental, which he did.

This Court finds that under the laws of Georgia under such circumstances Amos had authority in behalf of Transcontinental to execute the contract of guaranty.

The following statement by the Georgia Court of Appeals, citing many Georgia precedents, gives the Georgia rule on this question, to-wit:

" 'The authority of an agent in a particular instance need not be proved by express contract; it may be established by the principal's conduct and course of dealing, and if one holds out another as his agent, and by his course of dealing indicates that the agent has certain authority, and thus induces another to deal with his agent as such, he is estopped to deny that the agent has any authority which, as reasonably deducible from the conduct of the parties, the agent apparently has,' Germain Co. v. Bank of Camden County, 14 Ga.App. 88, 80 S.E. 302; Patterson v. Southern Railway Co., 41 Ga.App. 94(1) 151 S.E. 818. The fact of agency may be established by proof of circumstances, apparent relations, and conduct of the parties." Equitable Credit Corp. v. Johnson, 86 Ga.App. 844, p. 847–848, 72 S.E.2d 816, p. 819.

The above rule was also pronounced by the Georgia court in the case of Rothberg v. Manhattan Coil Corp., 84 Ga.App. 528, 66 S.E.2d 390. In that case, however, the act done by the agent of the corporation was not done in the ordinary course of business, for it contemplated the sale of corporate assets necessary to the operation of the business. The Court pointed out, however, that it appeared

" * * * the corporation took action to formally approve his acts from time to time." Rothberg v. Manhattan Coil Corp., supra, p. 534, 66 S.E.2d p. 395.

The Court, citing another case, said that

" * * * the acquiescence of the stockholders in these former transactions gave rise to implied authority on his part to continue to buy and sell or mortgage such property. Where a corporate agent is held out as having authority to make a specified type of

contract by ratification of similar contracts made by him over a period of time, such authority will be implied in the absence of anything to the contrary." Rothberg v. Manhattan Coil Corp., supra, pages 534 and 535, 66 S.E.2d p. 395.

The Court also said:

"An express agency for a specified purpose includes all acts reasonable and necessary to effectuate that purpose."

In the instant case a guaranty by defendant was necessary to effectuate the purchase of goods from the plaintiff by the subsidiary corporation.

The fact that Amos was the only agent of defendant with which the plaintiff had dealings will not aid the defense. The same fact appeared in the case of Millender v. Looper, 86 Ga.App. 430, where at p. 438, 71 S.E.2d 724, at p. 730, the following appears:

" * * * Homer Smith was the only man that we had any dealings with at all."

With that fact in evidence the court held:

"The jury was authorized to find from the evidence that the plaintiff, by his course of dealing with the defendant, made it appear that Homer Smith was his general agent for the storing and removal of the cotton sheeting in the defendant's warehouse."

The fact that Amos was given somewhat of a "free hand" in his dealings is borne out by the fact that when the plaintiff wrote to defendant requesting a resolution, the letter went only to Mr. Amos. As to all of his dealings with the plaintiff in behalf of defendants it does not appear that he was supervised or limited in any way.[1]

(3) The next issue in the case is as follows:

"IF THE COURT FINDS THAT DEFENDANT AMOS DID NOT HAVE AUTHORITY TO BIND TRANSON-

---

1. For a large number of Georgia cases holding a defendant liable because his agent had apparent authority, see Georgia Digest by West, Title "Principal and Agent" beginning at § 99.

IC CORPORATION, IT MUST DECIDE WHETHER THE ACT OF DEFENDANT AMOS IN EXECUTING THE GUARANTY AS VICE-PRESIDENT AND/OR SECRETARY-TREASURER OF TRANSONIC CORPORATION WAS RATIFIED BY TRANSONIC CORPORATION BY RESOLUTION OF ITS STOCKHOLDERS OR IN ANY OTHER MANNER."

█ It is undisputed that the stockholders of Transonic Corporation by resolution did ratify all acts of its officers for the previous year, including Amos. No good reason is shown why this resolution is not effective, except that defendant contends the corporation could not ratify without knowledge of the transaction. However, under all the facts and circumstances this Court holds that Transonic Corporation had knowledge, actual or constructive, of such guaranty. The evidence is undisputed that Transonic owned all of the stock of Transco-Southern, that the officers and directors of each were entwined together, that the two corporations occupied the same offices, that they had the same bookkeeper, and to some extent used the same books (at least as to the control). There are other facts and circumstances in the record not here detailed. As stated above, however, if the other officers did not know what Amos was doing, it merely illustrates the extent of his authority.

(4) The next question raised is as follows:

"IF NO RATIFICATION IS FOUND, THEN THE COURT MUST DETERMINE WHETHER TRANSONIC CORPORATION, WITHOUT REGARD TO THE QUESTION OF RATIFICATION, RECEIVED SUCH BENEFITS UNDER THE GUARANTY AS TO ESTOP IT FROM NOW DENYING LIABILITY."

█ The law is quite clear that a corporation may not knowingly retain the benefits of a contract by its agent and at the same time refuse to pay for the same for the reason, as alleged, that the agent exceeded his authority. Thus, in Alexis, Inc. v. Werbell, 209 Ga. 665, 669, 75 S.E.2d 168, 171, it is stated:

"No application of the doctrine of ultra vires acts will allow a corporation to retain and use the benefits of a contract and at the same time refuse to comply with its part of the contract under which they were obtained."

Many similar cases are cited by plaintiff in its brief. It is not necessary in this case for the Court to place its holding on the above principle. It does appear in this case that the defendant corporation did receive a substantial indirect benefit by virtue of its wholly owned subsidiary, obtaining from plaintiff merchandise in the amount of approximately Thirty Thousand ($30,000.00) Dollars on which there is a balance now of approximately Twelve Thousand ($12,000.00) Dollars due. As stated by the Ohio court:

"To deny the authority of the secretary to make the guaranty in question, would enable a corporation to impose on the business public, availing itself of those engagements made by him which were for its benefit, and avoiding those which entailed loss upon it." See Cleveland Builders Supply Company v. City Investment Company, 23 Ohio Dec. 474, 14 Ohio, N.P.,N.S., 383.

It appears that Transco-Southern was adjudicated a bankrupt and at that time owed a balance of Twelve Thousand, Six Hundred and Sixty One Dollars and Eighty-Five Cents ($12,661.85). Counsel for all parties will have a period of ten (10) days after receipt of copy of this Opinion in which to file objections, corrections and amendments, following which counsel for plaintiff may submit a proper Judgment to be entered by the Court.